(No. 30610.—

ERNEST N. HIGGINS, doing business as Higgins Dairy, Appellant, *vs.* The City of Galesburg, Appellee.

*Opinion filed September 24, 1948.*

YOUNGE, FREDERICK & RUTHERFORD, of Peoria, and BURRELL BARASH, of Galesburg, for appellant.

LUCIEN S. FIELD, Corporation Counsel, of Galesburg, for appellee.

Mr. JUSTICE WILSON delivered the opinion of the court:

This appeal presents for our decision the validity of a comprehensive regulatory milk ordinance of the city of

Galesburg. By the complaint, as amended, filed by Ernest N. Higgins, doing business as Higgins Dairy, in the circuit court of Knox County, the answer of the defendant, the city of Galesburg, and a stipulation of the parties, issues were made with respect to the validity of a portion of section 3 and the validity of section 5 of the ordinance. The trial court decided the issues in favor of defendant and against plaintiff and has certified that public interest requires a direct appeal to this court.

An ordinance of the city of Galesburg regulates the sale and distribution of all types of milk within the city. Section 1 defines "milk," "milk plant," and "pasteurized milk." "Milk producer" is defined as any person, firm or corporation who operates or controls a dairy farm or other place where milk is produced, even though the number of cows kept for the production of milk does not exceed one in number. The second section prescribes a license or permit for the sale, delivery or distribution of milk for human consumption within the city. Section 3 makes three classifications for licenses: (1) Producers, described as persons engaged in supplying milk to milk plants licensed by the city; (2) Retailers, persons purchasing bottled milk from milk plants licensed by the city for resale in its original bottle; (3) Distributors, persons engaged in operating or conducting milk plants or in the sale, delivery or distribution of milk within the city. Modest annual license fees of one dollar are fixed for those in the first two groups and five dollars for the third group, with an additional fee of five dollars for each delivery vehicle over one used for delivery purposes. The fourth section, specifying certain standards for the production and handling of milk, provides: "All milk offered for sale or distribution for human consumption within the City of Galesburg, Illinois, shall be derived only from a licensed milk producer." Section 5 ordains: "No milk except skim milk, buttermilk or sour milk shall be sold at retail or wholesale in quantities less

than two gallons except in sanitary milk containers and must be bottled in a licensed milk plant located within ten miles of the corporate limits of the City of Galesburg. The milk inspector of the City of Galesburg shall inspect each such licensed milk plant at least once every three months. The caps of such bottles shall bear the true name of the contents and the name and address of the distributor." Section 19 provides that any person desiring a permit or license shall file a written application with the city clerk, pay the license fee required, and submit to an investigation by the milk inspector of the city to determine whether the applicant has complied with the provisions of the ordinance. The twentieth section prescribes a fine of not less than two nor more than two hundred dollars for each violation of any of the provisions of the ordinance.

Higgins is engaged in the wholesale and retail sale and distribution of milk in Galesburg. He purchases milk from the plant of J. D. Roszell Company, located in Peoria, where it is pasteurized and bottled. This corporation operates a milk pasteurization and bottling plant in Peoria, is licensed and inspected under the provisions of the applicable health ordinances of the city of Peoria and the statutes of the State. The Roszell Company obtains its milk from approximately 1200 different milk producing farms, all located beyond the city limits of Galesburg and in the vicinity of Peoria. Neither the plant of J. D. Roszell Company nor any of the producers of milk from whom it makes purchases are licensed under the milk ordinance of Galesburg. The milk pasteurized, bottled and sold from the J. D, Roszell Company plant by Higgins, the plant and Higgins's distribution and handling of the milk, comply with all the provisions of the milk ordinace except that the plant is located more than ten miles from the corporate limits of the city of Galesburg and is not licensed by the city nor its milk derived from persons who are licensed by the city of Galesburg. Higgins applied to the city of Galesburg

for a permit as a distributor, listing the 1200 producers furnishing milk to J. D. Roszell Company. His application was denied upon the grounds that the plant of J. D. Roszell Company was located more than ten miles from the corporate limits of Galesburg and that the milk sold was not derived from producers licensed by the city of Galesburg. After denial of his amended application, Higgins was arrested for selling or distributing milk not derived from producers licensed by the city, selling, delivering or distributing milk without a license or permit, and with selling milk at wholesale not bottled in a licensed milk plant located within ten miles of the corporate limits of Galesburg.

Following repeated arrests, the plaintiff, Higgins, filed his complaint and, later, an amendment thereto, against the defendant, the city of Galesburg, alleging the facts previously recounted. The relief sought, so far as relevant, was a determination that portions of the milk ordinance be declared null and void; that defendant be directed to approve plaintiff's application for license and that a license be issued to him for the sale and distribution of milk in the city, and that defendant be restrained from prosecuting actions against plaintiff under the ordinance because of any failure to procure a license thereunder. Defendant answered the complaint. By a stipulation of the parties, the only questions presented for disposition in the trial court were (1) the validity of section 3 of the milk ordinance, to the extent it requires the licensing of nonresident producers of milk, which milk is sold or distributed in Galesburg by persons other than the producers, and providing for a charge of a license fee of one dollar per year for inspection costs, and (2) the validity of section 5 which prevents the sale of milk, except skim milk, buttermilk, or sour milk, unless bottled in licensed milk plants located within ten miles of the corporate limits of the city. On January 5, 1948, a decree was entered finding the challenged portion of section 3 and section 5 reasonable and

valid, and that the equities were with defendant. Accordingly, plaintiff's complaint, as amended, was dismissed for the want of equity. This appeal followed.

Plaintiff makes the contention here, as he did in the trial court, that the city of Galesburg lacks the power and does not have extra-territorial jurisdiction to license milk plants and dairy farms outside its corporate limits; that the provision of section 5 outlawing milk bottled in a milk plant located more than ten miles from the city is unreasonable, arbitrary and discriminatory and a violation of the fifth amendment and section 1 of the fourteenth amendment to the Federal constitution and the due process clause of our constitution. To sustain the decree assailed, defendant maintains that the power of a city to regulate the sale or distribution of milk within the city includes the power to regulate the source of supply of the milk when the source of supply is located outside the city; that, in regulating by means of inspection and license the outside sources of supply of milk brought into the city for sale or distribution, the city does not exercise extra-territorial power, and that the ten-mile limitation for milk plants supplying milk for sale or distribution within the corporate limits of Galesburg is a reasonable and valid exercise of the general power to regulate the municipal milk supply.

Section 63 of article 23 of the Revised Cities and Villages Act (Ill. Rev. Stat. 1947, chap. 24, par. 23-63,) grants power to the corporate authorities of a municipality to regulate the sale of all beverages and food for human consumption; to locate and regulate the places where, and the manner in which, any beverage or food for human consumption is sold. Section 64 empowers the city to provide for and regulate the inspection of all food for human consumption and tobacco. Section 81 authorizes municipalities to do all acts and make all regulations which may be necessary or expedient for the promotion of health or the suppression of disease. Section 105 is a grant of power to

pass and enforce all necessary police ordinances. Section 1 of article 8 provides that the corporate authorities in all municipalities have jurisdiction in and over all places within one-half mile of the corporate limits for the purpose of enforcing health and quarantine ordinances and regulations. Ill. Rev. Stat. 1947, chap. 24, par. 8-1.

Municipal corporations are creatures of statute and have no inherent powers. In this State, a city organized under the Cities and Villages Act enjoys such powers only as are expressly delegated by the General Assembly or necessarily implied to render the grant of specific powers effective. (*Dean Milk Co.* v. *City of Chicago,* 385 Ill. 565; *City of Rockford* v. *Hey,* 366 Ill. 526.) Legislative powers of municipal corporations are strictly construed, and any rational doubt as to the existence of power must be resolved against the municipality. (*People ex rel. Friend* v. *City of Chicago,* 261 Ill. 16.) Here, the statutory provisions set forth afford ample authority to regulate the sale and distribution of milk and, also, to impose reasonable license or permit fees for the purpose of rendering the regulation effective. (*Dean Milk Co.* v. *City of Chicago,* 385 Ill. 565; *American Baking Co.* v. *City of Wilmington,* 370 Ill. 400.) The narrow question presented is whether this power extends beyond the territorial limits of a city and, if so, how far. The Cities and Villages Act expressly confers jurisdiction upon municipal corporations within one-half mile of the corporate limits for the purpose of enforcing health and quarantine ordinances and regulations. This grant of jurisdiction is necessarily a denial of jurisdiction beyond one-half mile of the corporate limits for these purposes. In short, the legislature has not delegated power to municipal corporations to pass a regulatory and license ordinance which assumes to regulate dairy farms or milk-bottling plants outside their corporate limits.

Well-established principles support our conclusion. Municipalities have no extra-territorial licensing power unless

expressly or impliedly delegated by statute. (38 Am. Jur., Municipal Corporations, sec. 358; *City of Des Plaines* v. *Boeckenhauer,* 383 Ill. 475; *Kiel* v. *City of Chicago,* 176 Ill. 137.) Our observations in *City of Rockford* v. *Hey* apply with like force here. "An inherent or implied limitation upon the city in the exercise of the powers delegated to it by the legislature is that such powers shall be exercised within the corporate boundaries of the municipalities. Ordinances cannot have extra-territorial effect unless power is plainly conferred upon the corporation. Municipal ordinances are, therefore, necessarily local in their application, operating usually only in the territory of the municipality by which they are enacted and without force beyond it." Plaintiff does not contend, and our decision is not to be construed as holding, that defendant lacks power to regulate the sale of or inspect the milk sold by him in the city of. Galesburg solely because it was produced and bottled on and in farms and milk plants more than one-half mile beyond the city limits. It does not follow, however, that because the city has the right to regulate the sale of and inspect milk sold within its corporate limits it is empowered to license milk-producing farms and milk plants in Peoria and elsewhere. Specifically, the city of Galesburg, without question, enjoys the right and is vested with power to regulate and inspect milk sold within its territorial limits. Conversely, the power to impose a license fee upon a place of production or processing more than one-half mile beyond the city is wanting.

The ordinance before us purports to regulate and license the business of conducting milk plants and dairy farms. Section 3 admits of no other reasonable construction when it provides, "The annual fee for such licenses for permits shall be as follows: "For persons engaged in supplying milk to milk plants licensed by said City of Galesburg, $1.00 per annum; * * * for all other persons not coming within the foregoing classification who are engaged in

operating or conducting a milk plant or in the sale, delivery or distribution of milk within the said City of Galesburg, a license fee of $5.00 per annum." Section 5 provides that all milk "must be bottled in a licensed milk plant located within ten miles of the corporate limits of the City of Galesburg" and "The milk inspector of the City of Galesburg shall inspect each such licensed milk plant at least once every three months." The foregoing provisions of the milk ordinance of the city of Galesburg, and others not set forth, constitute an attempted regulation and licensing of the business of operating dairy farms and conducting milk plants. Statutory authority for a municipality to require a dairy· farm or milk plant located more than one-half mile beyond its limits to obtain a license or permit and pay an inspection fee is lacking. Defendant cannot require such dairy farmer or milk plant to pay a license fee as a condition precedent to the sale ȯr distribution of milk by a distributor within the corporate limits of the municipality so long as the Cities and Villages Act confers jurisdiction to enforce health and quarantine ordinances only one-half mile beyond the corporate limits. The challenged provisions of the ordinance represent attempts to exercise extra-territorial jurisdiction by the city of Galesburg and, for the reasons stated in this opinion and upon the authority of *City of Rockford* v. *Hey,* 366 Ill. 526, these provisions are invalid and void.

It becomes unnecessary to decide whether the portions of section 3 of the milk ordinance attacked by plaintiff and, also, section 5 transcend Federal and State constitutional guaranties.

The judgment of the circuit court of Knox County is reversed and the cause remanded, with directions to proceed in accordance with the views expressed in this opinion.

*Reversed and remanded, with directions.*