# Illinois Official Reports

## Appellate Court

***Kloeppel v. Champaign County Board*, 2021 IL App (4th) 210091**

| | |
|---|---|
| Appellate Court Caption | DARLENE KLOEPPEL, in Her Official Capacity as Champaign County Executive, Plaintiff-Appellee, v. THE CHAMPAIGN COUNTY BOARD, Defendant-Appellant. |
| District & No. | Fourth District<br>No. 4-21-0091 |
| Filed | November 12, 2021 |
| Decision Under Review | Appeal from the Circuit Court of Champaign County, No. 20-MR-460; the Hon. Jason M. Bohm, Judge, presiding. |
| Judgment | Judgment reversed. |
| Counsel on Appeal | Keri-Lyn J. Krafthefer and Steven D. Mahrt, of Ancel Glink, P.C., of Bloomington, for appellant.<br><br>James B. Harvey and Tammy S. Warden, of Tracy Johnson & Wilson, of Joliet, for appellee.<br><br>James W. Glasgow, State's Attorney, of Joliet (Adam Lipetz, Assistant State's Attorney, of counsel), for *amicus curiae* County of Will. |

JUSTICE DeARMOND delivered the judgment of the court, with opinion.

Justices Cavanagh and Steigmann concurred in the judgment and opinion.

**OPINION**

¶ 1    This appeal involves an intracounty government dispute over who holds authority to appoint a person to fill a vacancy in an elected county office, including vacancies on the county board. On one side, plaintiff, Champaign County Executive Darlene Kloeppel (County Executive or Kloeppel), alleges section 2-5009(d) in the Counties Code (55 ILCS 5/2-5009(d) (West 2020)) gives her the appointment power and asks this court to affirm the trial court's order declaring the same and entering summary judgment for her. On the other side, defendant, the Champaign County Board (County Board), asserts section 25-11 of the Election Code (10 ILCS 5/25-11 (West 2020)) gives the appointment power to the chair of the county board and asks us to reverse the trial court's order denying it summary judgment. Reading the plain language of each statute and giving effect to both, we conclude the Election Code governs appointments to vacancies in elected offices and gives that power to the county board chair. We therefore reverse the trial court's order entering summary judgment for Kloeppel and enter summary judgment for the County Board.

¶ 2                                    I. BACKGROUND

¶ 3    In the November 2016 general election, the Champaign County electorate voted to change the county government's structure from a township organization under division 2-1 of article 2 of the Counties Code (55 ILCS 5/art. 2, div. 2-1 (West 2016)) to a county executive organization under division 2-5 of article 2, known as the County Executive Law (55 ILCS 5/art. 2, div. 2-5 (West 2016)). Two years later, the voters elected plaintiff, Darlene Kloeppel, Champaign County's first county executive. Since Kloeppel took office, certain elected county offices (namely, the county treasurer and seats on the County Board) became vacant before their elected term expired and, therefore, required persons be appointed to fill the vacancies. As had been done before the change in county government structure, those appointments were made by the County Board chair pursuant to section 25-11 of the Election Code (10 ILCS 5/25-11 (West 2018)).

¶ 4    In June 2020, Kloeppel filed a complaint alleging the County Board chair "usurped [her] executive duties by appointing four (4) County Board Members and one (1) County Treasurer." Kloeppel argued the County Executive Law, particularly section 2-5009(d)'s grant of power to "appoint *** persons to serve on the various boards and commissions to which appointments are provided by law to be made by the board" (55 ILCS 5/2-5009(d) (West 2020)) gave her, the county executive, "[t]he power to appoint persons to fill County Board vacancies." Though Kloeppel acknowledged section 25-11 of the Election Code outlined the procedure for filling vacancies in elected offices and seemingly settled the appointment duties on "the chair of the county board or board of county commissioners with the advice and consent of the county board or board of county commissioners" (10 ILCS 5/25-11 (West 2020)), she argued the county board chair does not exist under the county executive form of government and,

therefore, section 25-11 of the Election Code must be read in light of section 2-5009(d) of the County Executive Law to give the appointment power to the person presiding over the county board—the county executive. See 55 ILCS 5/2-5009(*l*) (West 2020). Kloeppel ultimately asked the trial court to "declare as a matter of law *** [t]hat the County Executive is the proper appointing official, including the persons to serve on the various boards and commissions in Champaign County, including County Board vacancies."

¶ 5        The County Board's answer denied it usurped the appointment power from the County Executive and relied on a plain reading of section 25-11, which expressly provides an elected office "vacancy *shall be filled* within 60 days *by appointment of the chair of the county board* or board of county commissioners with the advice and consent of the county board or board of county commissioners." (Emphases added.) 10 ILCS 5/25-11 (West 2020).

¶ 6        The litigation culminated in dueling dispositive motions: the plaintiff's motion for judgment on the pleadings and defendant's motion for summary judgment. Following a telephonic hearing, the trial court took the matter under advisement and promised the parties a written ruling.

¶ 7        The trial court's order first addressed the procedural posture, noting that, although the parties presented different motions, neither presented a factual dispute and both sought judgment as a matter of law. Consequently, the trial court treated the parties' filings as cross-motions for summary judgment.

¶ 8        The trial court next identified "[t]he primary statute at issue in this case [a]s 55 ILCS 5/2-5009(d), which requires a county executive to 'appoint, with the advice and consent of the board, persons to serve on the various boards and commissions to which appointments are provided by law to be made by the board.' " The court then concluded: "The plain language of this statute indicates that a county executive is to make appointments to vacancies for unexpired terms on a county board." The trial court reasoned the County Board was included in "various boards and commissions" because it was not excepted from the phrase. It further reasoned that section 25-11 of the Election Code provided for appointments to the board when vacancies occurred, thereby making the County Board one of the " 'various boards *** to which appointments are provided by law to be made by the board.' "

¶ 9        The trial court then evaluated the County Executive Law as a whole and considered "how [it] interacts with the Election Code." The trial court identified two relevant provisions in the County Executive Law, namely the "explicit supersession of the election of a chairman of the board [in subsection 2-5015] and [the] requirement that a county executive preside over the board meetings." The court concluded, "It follows that the appointment powers previously possessed by the chairman of the board would necessarily flow to the county executive after adoption of that form of government." The trial court then concluded, "In short, when considering the County Executive Law as a whole and in context with the other statutory provisions, the 'sensible construction' is one that places the appointment power in the hands of the chief executive officer," quoting *Wade v. City of North Chicago Police Pension Board*, 226 Ill. 2d 485, 510, 877 N.E.2d 1101, 1116 (2007).

¶ 10       The trial court lastly addressed Kloeppel's request that it declare "[t]hat the office of County Board Chairman does not exist in a County Executive form of government such as Champaign County" and enjoin the County Board from giving a member the title of County Board chair. The trial court declined Kloeppel's request because the County Executive Law "does not prohibit use of that title."

¶ 11 Writing in broad terms, the trial court concluded the County Executive held the "appointment power," reasoning: "To say that Ms. Kloeppel is the County Executive, but she lacks appointment power would be to lend her the title but not the functions that the voters have given her." The trial court ultimately "declare[d] that the County Executive is the proper appointing official, including appoints [*sic*] to be made pursuant to the Election Code." The trial court entered summary judgment for plaintiff and against defendant.

¶ 12 This appeal followed.

## II. ANALYSIS

¶ 14 Defendant challenges the trial court's order, arguing it erred in declaring the county executive holds the power to appoint persons to fill vacancies in elected county offices because the Election Code expressly states the county board chair must make those appointments. Specifically, defendant contends the trial court interpreted section 2-5009(d) "to create an inconsistency" with section 25-11 in the Election Code. Plaintiff counters by arguing the trial court reached the proper conclusion because, "when taken as a whole, the Illinois legislature granted the County Executive with appointing powers that were not limited to non-elected positions but included positions on the Champaign County Board itself." Kloeppel specifically argues section 2-5009(d) makes "the County Executive *** the proper appointing official to fill vacancies in elected county offices, including appointments to be made to the County Board."

¶ 15 Resolving this dispute requires statutory construction, which simply means "[t]he act or process of interpreting" or explaining the meaning of a statute. Black's Law Dictionary (11th ed. 2019). Since "[t]he interpretation of a statute is a matter of law, *** we review the trial court's decision *de novo*" (*Village of Chatham v. County of Sangamon*, 351 Ill. App. 3d 889, 894, 814 N.E.2d 216, 222 (2004)), meaning we owe no deference to the trial court's interpretation or decision. "It is well established that [our] primary objective *** when construing the meaning of a statute is to ascertain and give effect to the legislature's intent." *Michigan Avenue National Bank v. County of Cook*, 191 Ill. 2d 493, 503-04, 732 N.E.2d 528, 535 (2000). We look first to the statute's language because it is "the most reliable indicator of the legislature's objectives in enacting a particular law." *Michigan Avenue National Bank*, 191 Ill. 2d at 504. Put differently, the specific words the legislature chose to use are the best evidence of legislative intent. See *Laborer's International Union of North America, Local 1280 v. Illinois State Labor Relations Board*, 154 Ill. App. 3d 1045, 1058, 507 N.E.2d 1200, 1209 (1987) (stating "the specific words of the statute are the best indicators of the legislative intent behind the enactment"). When interpreting a statute, we "view all provisions of an enactment as a whole," taking care not to isolate words and phrases but reading them "in light of other relevant provisions of the statute." *Michigan Avenue National Bank*, 191 Ill. 2d at 504. We give the statute's words their plain, ordinary meanings, and if the "language is clear and unambiguous, we must apply the statute without resort to further aids of statutory construction." *Michigan Avenue National Bank*, 191 Ill. 2d at 504.

¶ 16 Sometimes, as happens here, it may appear two statutes relate to the same subject, and we must consider both statutes to determine what the one challenged statute means. In other words, "[s]tatutes relating to the same subject must be compared and construed with reference to each other so that effect may be given to all of the provisions of each if possible." *Knolls Condominium Ass'n v. Harms*, 202 Ill. 2d 450, 459, 781 N.E.2d 261, 267 (2002). When

comparing and construing related statutes, "[w]e presume the legislature *** acted rationally and with full knowledge of other statutes and judicial decisions concerning existing law." *Village of Chatham*, 351 Ill. App. 3d at 895; see also *Flynn v. Industrial Comm'n*, 211 Ill. 2d 546, 555, 813 N.E.2d 119, 125 (2004). Consequently, we read relating statutes "harmoniously so that no provisions are rendered inoperative." *Knolls*, 202 Ill. 2d at 458-59. "Even when an apparent conflict between statutes exists, they *must be* construed in harmony with one another if reasonably possible." (Emphasis added.) *Knolls*, 202 Ill. 2d at 459. If two statutes do relate to the same subject and do conflict and cannot be read harmoniously, then the more specific statute prevails over the more general statute. To be sure, our supreme court has instructed: "It is also a fundamental rule of statutory construction that where there exists a general statutory provision and a specific statutory provision, either in the same or in another act, both relating to the same subject, the specific provision controls and should be applied." *Knolls*, 202 Ill. 2d at 459.

¶ 17    It bears noting what a reviewing court must avoid during statutory construction. Indeed, knowing what a reviewing court cannot do informs our analysis concerning what we can and must do when interpreting a statute. For example, "the court may not declare that the legislature did not mean what the plain language of the statute imports." *Laborer's International*, 154 Ill. App. 3d at 1058 ("No rule of construction authorizes a court to decide that the legislature did not mean what the plain statutory language imports."). Similarly, a reviewing court must not rewrite statutes "to make them consistent with the court's idea of orderliness and public policy." (Internal quotation marks omitted.) *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 92, 606 N.E.2d 1111, 1118-19 (1992). "Nor, under the guise of statutory interpretation, can we 'correct' an apparent legislative oversight by rewriting a statute in a manner inconsistent with its clear and unambiguous language." *People v. Pullen*, 192 Ill. 2d 36, 42, 733 N.E.2d 1235, 1238 (2000).

¶ 18    Finally, we note the statute's meaning is paramount. The county executive is "a creature of statute *** [who] possesses only those powers conferred upon it by law." *Bryant v. Board of Election Commissioners*, 224 Ill. 2d 473, 476, 865 N.E.2d 189, 192 (2007) (*per curiam*). Like other creatures of statute, the county executive holds no inherent powers. *Higgins v. City of Galesburg*, 401 Ill. 87, 92, 81 N.E.2d 520, 523 (1948). A county executive elected pursuant to the County Executive Law "enjoys such powers only as are expressly delegated by the General Assembly or necessarily implied to render the grant of specific powers effective." *Higgins*, 401 Ill. at 92.

¶ 19    With these principles in mind, we turn to the disputed statute, section 2-5009(d) in the Counties Code (55 ILCS 5/2-5009(d) (West 2020)) and the related provision, section 25-11 of the Election Code (10 ILCS 5/25-11 (West 2020)).

¶ 20                          A. The Statutes

¶ 21    As we see it, the two statutes at play in this case seemingly relate to the same subject (the appointment power), and each side contends its chosen statute gives that party the power to appoint persons to fill vacancies in elected offices. As part of the County Executive Law (55 ILCS 5/art. 2, div. 2-5 (West 2020)), section 2-5009 outlines a county executive's powers and duties, and section 2-5009(d) specifically provides: "Any county executive elected under this Division shall *** appoint, with the advice and consent of the board, persons to serve on the various boards and commissions to which appointments are provided by law to be made by the

board." 55 ILCS 5/2-5009(d) (West 2020). Kloeppel bases her argument on this provision. Section 25-11 of the Election Code, as is relevant here, provides:

> "When a vacancy occurs in any elective county office, *** the county board or board of county commissioners shall declare that such vacancy exists and notification thereof shall be given to the county central committee or the appropriate county board or board of county commissioners district committee of each established political party within 3 days of the occurrence of the vacancy. The vacancy shall be filled within 60 days by appointment of the chair of the county board or board of county commissioners with the advice and consent of the county board or board of county commissioners. *** The appointee shall be a member of the same political party as the person he succeeds was at the time of his election and shall be otherwise eligible to serve. The appointee shall serve the remainder of the unexpired term. However, if more than 28 months remain in the term, the appointment shall be until the next general election at which time the vacated office shall be filled by election for the remainder of the term. In the case of a vacancy in a seat on a county board *** which has been divided into districts under Section 2-3003 *** of the Counties Code, the appointee must also be a resident of the county board *** district." 10 ILCS 5/25-11 (West 2020).

The County Board, understandably, relies upon this latter provision. In simplest terms, this case comes down to which statute prevails when there is a vacancy in an elected office. Does section 2-5009(d)'s mandate that the county executive "shall *** appoint, with the advice and consent of the board, persons to serve on the various boards and commissions to which appointments are provided by law to be made by the board" (55 ILCS 5/2-5009(d) (West 2020)) mean that the county executive appoints persons to fill vacancies in elected office, including appointments to be made to the county board? Looking to the statutes' plain language and applying the above statutory construction principles, we answer no.

¶ 22                    1. *Section 2-5009(d)'s Plain Language: "Various Boards and Commissions"*

¶ 23     Echoing the trial court's determination, Kloeppel argues, "[a] plain reading of Section 2-5009(d) requires the County Executive to make appointments and the County Board to evaluate those appointments for approval or rejection." But this argument invites the question, "appointment to what?" Kloeppel's complaint and brief on appeal narrow the question to who holds authority to appoint persons to fill vacancies in *elective county offices*. Indeed, the complaint alleged the county board chair "usurped Darlene Kloeppel's executive duties by appointing" persons to elected county offices when vacancies occurred during an unexpired term, namely "four (4) County Board Members and one (1) County Treasurer." We must now consider whether section 2-5009(d)'s plain language grants Kloeppel power to make appointments to vacant elective offices.

¶ 24     On its face, section 2-5009(d) applies to the county executive appointing persons to serve on "various boards and commissions." 55 ILCS 5/2-5009(d) (West 2020). This plain language does not extend to elected offices. The offices of county auditor (55 ILCS 5/art. 3, div. 3-1 (West 2020)) or county clerk (55 ILCS 5/art. 3, div. 3-2 (West 2020)) or county coroner (55 ILCS 5/art. 3, div. 3-3 (West 2020)) or county recorder (55 ILCS 5/art. 3, div. 3-5 (West 2020)) or county sheriff (55 ILCS 5/art. 3, div. 3-6 (West 2020)) or state's attorney (55 ILCS 5/art. 3, div. 3-9 (West 2020)) or county treasurer (55 ILCS 5/art. 3, div. 3-10 (West 2020)) are not boards or commissions. We cannot see, or even devise, a way to read "various boards and

commissions" to include these specific offices when none of the above elected offices are a board or commission.

¶ 25    Of the elected offices in Champaign County government, only the office of county board member could *possibly* be swept into the phrase "various boards and commissions," which is what Kloeppel attempts to do. But even if we could lump the county board into "various boards and commissions" (which cannot be done, as we will explain below), doing so would not allow us to broaden section 2-5009(d)'s plain language to mean that the county executive holds the power to appoint persons to fill vacancies in elective county offices, including county board vacancies. The statute's specific words simply do not suggest such a meaning, and by extension, those specific words do not indicate the legislature intended for the county executive to make all appointments to all vacant government positions, elected or otherwise. See *Laborer's International*, 154 Ill. App. 3d at 1058 (stating a statute's specific words are best evidence of legislative intent).

¶ 26    Section 2-5009(d)'s use of "boards" does not refer to the Champaign County Board. " 'County board' " or " 'board' " is a defined term under the County Executive Law, meaning "the governing body of any county other than Cook County which has adopted the county executive form of government under this Division." 55 ILCS 5/2-5003(a) (West 2020). Section 2-5003 instructs that this definition applies "unless the context requires otherwise." 55 ILCS 5/2-5003 (West 2020). Here, section 2-5009(d)'s context requires otherwise. By using the plural "boards," section 2-5009(d)'s context implies the legislature was not using the defined term from section 2-5003. The defined term is singular and, moreover, can only be singular. The defined term cannot be made plural—there is always only one county board in any form of county government.

¶ 27    By using "boards" in section 2-5009(d), did the legislature intend to include the " 'County board' " or " 'board' " within other "various boards and commissions to which appointments are provided by law to be made by the board?" See 55 ILCS 5/2-5003(a), 2-5009(d) (West 2020). Again, the context suggests probably not. Reading the entire County Executive Law, even section 2-5009(d) itself, we see first that when the legislature refers to the county board it uses the defined term and, second, the context makes clear the legislature is referring to the "board" only. See 55 ILCS 5/2-5003(c), 2-5004, 2-5005, 2-5008, 2-5009(a), (c), (d), (e), (f), (g), (*l*), (*l*-5), (m), (n), (o), (p), (q), 2-5010, 2-5011, 2-5012, 2-5013, 2-5015 (West 2020). Section 2-5009(d) is the only place in the County Executive Law where the legislature uses "boards." It seems curious for the legislature to define a term like "County board" or "board," to set it apart, to consistently use the defined term, but then, when it comes to appointing a person to serve on that specifically defined "board," to not use the defined term but the more general "various boards."

¶ 28    We further note the legislature's choice to modify "boards and commissions" with the adjective "various" is telling. "[V]arious" means "of an indefinite number greater than one" or "of differing kinds." Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/various (last visited Oct. 30, 2021) [https://perma.cc/9SEQ-Z8DS]. The legislature used "various" twice in the County Executive Law, in section 2-5009(d)'s "various boards and commissions" and in section 2-5009(e)'s "various special districts." 55 ILCS 5/2-5009(d), (e) (West 2020). Adding "various" to "boards" only underscores our conclusion that the legislature was not contemplating the "County board" being included with "boards and commissions" in section 2-5009(d) because when the legislature refers to the "county board" it does so clearly.

There is no such clarity in section 2-5009(d). Using the plural and modifying it with "various" seems to evidence an intent first to acknowledge administering a county government includes several boards and commissions and, second, to avoid naming the specific boards to which appointments are provided by law to be made by the board. It is a shortcut. It does not broaden or expand "boards and commissions" to include the county board or other elected county offices.

¶ 29     The best evidence of the legislature's intent is the specific words it used. See *Laborer's International*, 154 Ill. App. 3d at 1058. We do not see "various boards and commissions" in section 2-5009(d) (55 ILCS 5/2-5009(d) (West 2020)) as evidence the legislature intended to include the "county board"—a defined term—within other nondescript boards. Likewise, "various boards and commissions" does not evidence legislative intent to include elected county offices like auditor or treasurer or recorder within a county executive's appointment power. We therefore reject Kloeppel's argument or the trial court's conclusion that section 2-5009(d)'s plain language "indicates that county executive is to make appointments to vacancies for unexpired terms on a county board."

¶ 30                              2. *Election Code's Plain Language*
¶ 31     Section 25-11 of the Election Code outlines what must happen "[w]hen a vacancy occurs in any elective county office" and provides that a "vacancy shall be filled within 60 days by appointment of the chair of the county board or board of county commissioners with the advice and consent of the county board or board of county commissioners." 10 ILCS 5/25-11 (West 2020). Right away we see, like section 2-5009(d), section 25-11 speaks in mandatory terms by using "shall." In fact, the legislature also uses "shall" when describing how and to whom to announce a vacancy. The plain language indicates there is no option to deviate on how to go about filling vacancies in elected county offices. Next, we see section 25-11 identifies the county board chair as the person who, with the advice and consent of the board, appoints persons to fill a vacant elective county office. Finally, we note section 25-11 provides detailed, mandatory instructions relating to an appointee's eligibility and when an appointee can serve the remainder of an unexpired term. These specific instructions lend further support to our conclusion that section 25-11 provides for no discretion to deviate from its dictates. All told, we see section 25-11's plain language as clear and unambiguous—the county board chair, with the advice and consent of the board, appoints persons to fill a vacant elective office when the vacancy occurs during the unexpired term. Typically, when a reviewing court finds a statute's plain language clear and unambiguous, we stop construing the statute, we find the plain language prevails, and we conclude the statute means what it says. See *Michigan Avenue National Bank*, 191 Ill. 2d at 504. But here, Kloeppel and *amicus curiae* Will County contend section 25-11's plain language cannot prevail because a county organized under the county executive form of government has no county board chair. They then reason that, with no county board chair in the government, section 25-11 should be interpreted to give appointment power to the County Executive because she presides over the County Board. For the reasons explained below, we disagree.

¶ 32                              B. Is There a County Board Chair?
¶ 33     Kloeppel points to the County Executive Law itself as evidence the county board chair does not exist in a county executive government structure. She notes the County Executive

- 8 -

Law neither identifies the county board chair position nor does it outline the powers or duties associated with such a position. Consequently, she reasons the County Executive Law does not contemplate a county board chair.

¶ 34 Kloeppel directs our attention to section 2-5015 of the Counties Code, which provides:

"The adoption of the county executive form of government by any county pursuant to this Division shall supersede any plan adopted by the county board of that county pursuant to Section 2-3007, as now or hereafter amended, for the election of the chairman of the county board by the voters of the county." 55 ILCS 5/2-5015 (West 2020).

Kloeppel and *amicus* argue this provision establishes the legislature's intent that a county executive government does not include a county board chair. But we disagree. With section 2-5015, the legislature mandated that adopting a county executive government structure supersedes only one of three plans where there is a county board chair—the plan where "the chairman of the county board shall be elected by the voters of the county rather than by the members of the board." 55 ILCS 5/2-3007 (West 2020). Strikingly, section 2-5015 does not declare that adopting the county executive form of government supersedes plans where the county board members (or commissioners) choose one of their own to serve as county board chair. See 55 ILCS 5/2-1003, 2-4003 (West 2020). Kloeppel and *amicus*, and even the trial court, attribute this to "legislative oversight," meaning the legislature intended to supersede the other plan for choosing a county board chair but for some reason overlooked it. Even if that were so, we are not permitted to correct legislative oversight. That duty falls to the legislature alone. *Pullen*, 192 Ill. 2d at 42 (explaining we cannot " 'correct' an apparent legislative oversight by rewriting a statute in a manner inconsistent with its clear and unambiguous language"). Section 2-5015's plain language is clear—it supersedes only plans formulated under section 2-3007 and not those formulated under section 2-1003. "Language free from ambiguity and doubt will be given effect even if the consequences are harsh, absurd, or unwise." *Village of Chatham*, 351 Ill. App. 3d at 894 (citing *County of Knox ex rel. Masterson v. Highlands, L.L.C.*, 188 Ill. 2d 546, 557, 723 N.E.2d 256, 263 (1999)). We cannot account for why the General Assembly decided to supersede just one plan for choosing a county board chair (election by the voters) but not the others (selection by the board members or election by the commissioners). Nor do we need to give such an accounting because we do not legislate, we do not make policy decisions, and we cannot "decide that the legislature did not mean what the plain statutory language imports." *Laborer's International*, 154 Ill. App. 3d at 1058; see also *Abrahamson*, 153 Ill. 2d at 92.

¶ 35 As we understand it, section 2-5015's plain language does not evidence legislative intent there be *no* county board chair but merely that the county board chair will not be elected by the voters. Given that section 2-5015 provides for the county executive government to supersede only the plan where the county board chairman is elected by the voters, we cannot agree with Kloeppel and *amicus* that this section shows the County Executive Law contemplates the exclusion of a county board chair.

¶ 36 More importantly, though, we think Kloeppel and *amicus*'s argument that there is no county board chair in a county executive government structure rests on a faulty premise. Their contention presumes the County Executive Law is an independent law that solely administers this form of county government. It is not and does not. The County Executive Law's plain language indicates it must be administered in conjunction with other laws. For example, section

2-5003(c) of the County Executive Law provides: "The board shall act as the legislative body of the county under this form of county government." 55 ILCS 5/2-5003(c) (West 2020). The County Executive Law then gives no direction on how a county board—the county's legislative body—should operate. There is no guidance on what a county board can or cannot do in the county executive form of government. Similarly, section 2-5008 of the County Executive Law addresses qualifications for the county executive, providing: "The qualifications for the office of county executive are the same as those for membership on the board. However, the county executive shall not be an elected member of the county board." 55 ILCS 5/2-5008 (West 2020). What are the qualifications for county board membership? The County Executive Law is silent on that topic, too. One must go outside the County Executive Law to know who is eligible to serve as the county executive. And to know who is eligible to serve on a county board, one has to go outside the County Executive Law to other provisions in the Counties Code, presumably sections 2-3015 and 2-4010 (55 ILCS 5/2-3015, 2-4010 (West 2020)). Indeed, the County Executive Law makes no provision for board membership, composition, procedure, rules, etc., so we presume we must look to other statutes, like division 2-1 of the Counties Code (55 ILCS 5/art. 2, div. 2-1 (West 2020)) for legislative direction on those topics. Notably, section 2-1003 governs how the board chooses a chair and vice-chair, the term limit, and removal. 55 ILCS 5/2-1003 (West 2020).

¶ 37  Section 2-5011 is another provision in the County Executive Law that suggests it is not an independent statute. Section 2-5011 provides: "In case of the death, resignation or other inability of the county executive to act, the board shall select a person qualified under Section 2-5008 *and Section 25-11 of the Election Code* to serve as the interim county executive until the next general election." (Emphasis added.) 55 ILCS 5/2-5011 (West 2020) (referring the reader to provisions outside the County Executive Law). Section 2-5008 pertains to qualifications for the county executive, which are the same for county board members. But we must go elsewhere to know the qualifications for board members. Section 25-11 of the Election Code, of course, outlines how vacancies in any elective offices are filled. So when the county executive is no longer willing or able to serve, we are directed to other statutes to find a replacement.

¶ 38  Utilizing basic principles of statutory construction, we find the County Executive Law is not a stand-alone statute solely responsible for administering this form of county government. Instead, it outlines the means of selecting a County Executive and that person's duties and responsibilities in general. Section 2-5009(d) specifically and the County Executive Law generally must be read and applied in conjunction with other statutes, like the Election Code. Yet, Kloeppel and *amicus*'s arguments presume the County Executive Law governs in all matters relating to issues that might arise under a county executive form of government. We do not find such a presumption warranted. We must consider section 2-5009(d) alongside section 25-11 when determining who holds authority to appoint persons to fill vacant elective offices.

¶ 39  C. Considering the Statutes Together as a Whole

¶ 40  1. *Do the Statutes Conflict?*

¶ 41  The trial court apparently found the two statutes conflicted and could not be read harmoniously because it applied the canon of statutory construction that says, when two statutes conflict, the more recent provision prevails over the older one. See *Wells Fargo Bank*

*Minnesota, NA v. Envirobusiness, Inc.*, 2014 IL App (1st) 133575, ¶ 30, 22 N.E.3d 125 (stating when two statutes conflict, "the more recently enacted statute prevails over the older statute"). Noting the more recent provisions of the County Executive Law, Kloeppel and *amicus* urge for the trial court's rationale and analysis to prevail.

¶ 42    It is true the County Executive Law was enacted in 1990, while the Election Code dates back to the 1940s, but the Election Code has been more recently amended, which we find noteworthy. The General Assembly amended the County Executive Law in 2011, making an addition significant for our purposes here. The legislature amended section 2-5011, which addresses the death, resignation, or inability of the county executive to act, adding a reference to "Section 25-11 of the Election Code." Pub. Act 96-1540 (eff. Mar. 7, 2011) (amending 55 ILCS 5/2-5011). Following this amendment, when the county executive becomes unable or unwilling to serve, she is replaced pursuant to section 2-5008 of the County Executive Law *and* section 25-11 of the Election Code, meaning a replacement would be appointed by the board and presumably the county board chair. 55 ILCS 5/2-5011 (West 2020); 10 ILCS 5/25-11 (West 2020). This addition is telling because it confirms the legislature was aware of both statutes and intended for the "newer" County Executive Law to operate alongside the "older" Election Code.

¶ 43    Even more significant is the General Assembly's recent change to section 25-11 of the Election Code in 2019, altering "chairman" to "chair." This picayune change carries larger implications for this case. Champaign County voted to adopt the county executive government structure in 2016 and elected its first county executive in 2018, becoming only the second of 102 counties to do so since the inception of the County Executive Law in 1990. Since then, the legislature saw fit to make only a minor change to section 25-11. That minor change tangentially relates to the very issue before us, who appoints persons to fill vacancies in elected offices. Yet the legislature did not change who makes the appointment, only that person's title, the county board *chair*, not chairman. It did not add any reference to the county executive or address the issue Kloeppel and the trial court considered legislative oversight, even though two counties were, at the time of the amendment, operating under that form of government. See *Village of Chatham*, 351 Ill. App. 3d at 895 (stating that we presume the legislature acted rationally and with full knowledge of both statutes).

¶ 44    Though we do not see a conflict between the plain language of section 2-5009(d) of the County Executive Law and section 25-11 of the Election Code, if we had to resort to the canons of statutory construction, section 25-11 would prevail because it is the specific provision. *Village of Chatham*, 351 Ill. App. 3d at 896 ("Where two statutes appear to be in conflict, the more specific controls over the more general."). Section 25-11 outlines exactly what must occur when a vacancy occurs in an elective county office. The county board must declare the vacancy exists and inform the Democratic and Republican committees within three days. The county board chair, with the advice and consent of the board, then has 60 days to appoint someone to fill the vacancy. Section 25-11 also lays out the requirements for appointees—they must be eligible for the offices they are appointed to, and they must be a member of the same political party as the person who vacated the office. If the vacancy is on the county board in a county where the board members are elected from districts, then the appointee must be a resident in the district where the vacancy occurs. Section 25-11 also dictates when an appointee must stand for election. If more than 28 months remain in the term, the appointment lasts until the next general election. But if less than 28 months remain in the term, the appointee serves

the remainder of the term. These specific instructions for filling a vacancy in an elected office stand in stark contrast to section 2-5009(d)'s general provision about appointing "persons to serve on the various boards and commissions to which appointments are provided by law to be made by the board." 55 ILCS 5/2-5009(d) (West 2020).

¶ 45　　We pause here to make two observations, one relating to Kloeppel's argument specifically and one relating to the law generally. First, as we see it, Kloeppel's view, that section 2-5009(d) gives her all appointment powers in county government and that section 25-11 must be read in light of section 2-5009(d), requires us to make a series of presumptions or oversights that we should not and cannot make. Kloeppel's argument initially requires us to lump the defined, specific term, "County Board," into the undefined, broad phrase, "various boards and commissions." We must next presume "various boards and commissions" includes other elected offices likes treasurer, auditor, or recorder, etc. Kloeppel's view then requires us to presume the General Assembly intended for us to read "chair of the county board" in section 25-11 as the "presiding officer of the county board," which would be the county executive in this government structure. Alongside that presumption, we must overlook section 2-5015's plain language that the county executive form of government supersedes only one of three government plans with a county board chair—the plan where the county voters elected the county board chair. Kloeppel further asks us to presume the legislature also intended for the county executive structure to supersede the plan where the county board chair is selected from and by the members of the county board. Kloeppel's argument finally requires us to presume the County Executive Law is a self-contained, independent statute that solely administered this government structure. Only with these presumptions can we arrive at Kloeppel's conclusion that she as the county executive holds the power to appoint persons to fill vacancies in elected offices, including vacancies on the County Board. We do not believe the law governing statutory construction allows us to follow Kloeppel's analytical path to her legal conclusion. Under her view, there are too many dots to connect to give both section 2-5009(d) and section 25-11 effect and meaning. More importantly, it is the legislature's job to connect those dots, not ours. Perhaps the General Assembly intended for the county executive to assume all powers and duties previously held by the county board chair, but it did not convey such an intention with the plain language it used in either the County Executive Law or the Election Code. It is well established that "[a] court may not depart from the plain language of the statute and read into it exceptions, limitations, or conditions that are not consistent with the express legislative intent." *Hendricks v. Board of Trustees of the Police Pension Fund*, 2015 IL App (3d) 140858, ¶ 14, 38 N.E.3d 969. Yet Kloeppel asks us to go even further and conclude the legislature did not mean what it said, which we cannot do. See *Laborer's International*, 154 Ill. App. 3d at 1058 ("No rule of construction authorizes a court to decide that the legislature did not mean what the plain statutory language imports.").

¶ 46　　Second, we note our supreme court's view of the Election Code. The Illinois Supreme Court, albeit in a different context and without citation to authority, said the Election Code "supersedes other statutes on the same subjects." *United Citizens of Chicago & Illinois v. Coalition to Let the People Decide in 1989*, 125 Ill. 2d 332, 339, 531 N.E.2d 802, 805 (1988) ("Since the Election Code provides for uniformity in elections and supersedes other statutes on the same subjects, this court must interpret the pertinent sections of the Illinois Municipal Code to harmonize with it."). Because of the differences between this case and *United Citizens* we are not applying this principle here; we simply observe that our supreme court has

previously found the Election Code to prevail over other statutes and find that to be sound reasoning.

¶ 47    Based on the foregoing, we find an argument that the County Executive Law must prevail because it was enacted more recently too simplistic, especially when the Election Code is the more specific provision and when the two statutes can be read together without conflict.

¶ 48                                    2. *A Harmonious Reading*

¶ 49    Considering the County Executive Law and the Election Code together, we agree with the County Board that the two statutes can (and must) be read harmoniously to give effect to both. See *Knolls*, 202 Ill. 2d at 459 ("Statutes relating to the same subject must be compared and construed with reference to each other so that effect may be given to all of the provisions of each if possible."). As we have explained, since the County Executive Law does not prohibit the existence of a county board chair in that government structure, the statutes' plain language is not mutually exclusive—meaning each statute's plain language can be given effect without treading upon the other. While section 25-11 of the Election Code gives the county board chair the power to appoint persons to fill vacancies in elected county offices, section 2-5009(d) of the County Executive Law gives the county executive the power to appoint persons to the various nonelected county boards and commissions that make up the departments of county government.

¶ 50                                        3. *A Coda*

¶ 51    Recall the precise question before us: Does section 2-5009(d)'s mandate that the county executive "shall *** appoint, with the advice and consent of the board, persons to serve on the various boards and commissions to which appointments are provided by law to be made by the board," (55 ILCS 5/2-5009(d) (West 2020)) mean that the county executive appoints persons to fill vacancies in elected offices, including appointments to the county board? We answer no. As a statutory creature, the county executive only has those powers expressly granted to her by statute. See *Bryant*, 224 Ill. 2d at 476; *Higgins*, 401 Ill. at 92. Simply put, neither section 2-5009(d) nor section 25-11 expressly grants her the power to appoint persons to fill vacant elected offices; rather, those statutes divide the appointment power between the county executive and the county board chair. Again, we cannot account for why the General Assembly chose this method for making appointments in county government. Instead, "[w]e presume the legislature, in enacting different statutes, acted rationally and with full knowledge of other statutes." *Village of Chatham*, 351 Ill. App. 3d at 895. And if divided appointment powers resulted from legislative oversight, we cannot correct it, since the statutory language is clear and unambiguous. See *Pullen*, 192 Ill. 2d at 42. Since it is possible to read the statutes' plain language harmoniously and give effect to each, we must do so. Accordingly, the County Board chair did not usurp the County Executive's appointment power by appointing persons to fill vacancies in the office of Champaign County treasurer and four seats on the Champaign County Board. We conclude the trial court erred in finding otherwise and entering summary judgment for Kloeppel and against the County Board.

¶ 52                                    III. CONCLUSION
¶ 53          For the reasons stated, we reverse the judgment of the Champaign County circuit court and
grant summary judgment in favor of defendant, the County Board.

¶ 54          Judgment reversed.