2022 IL App (1st) 220307
Opinion filed December 15, 2022

Fourth Division

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| KELLY A. MASTERTON, Guardian of the Estate of Michael Masterton, a Minor, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 18 CH 3503 |
| THE VILLAGE OF GLENVIEW POLICE PENSION BOARD, and THE VILLAGE OF GLENVIEW, | ) ) ) ) | Honorable David B. Atkins, |
| Defendants-Appellees. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE LAMPKIN delivered the judgment of the court, with opinion.
Justices Hoffman and Rochford concurred in the judgment and opinion.

**OPINION**

¶ 1     After Glenview police officer Owen Masterton died while attending roll call, the Village

of Glenview Police Pension Board (Board) began paying, on an interim basis, a minor children's

survivor pension benefit of 50% of salary to the officer's minor son, without prejudice to any

subsequent claim for an act of duty benefit. Two years later, the officer's ex-wife, plaintiff Kelly

Masterton, as guardian of the estate of their 10-year-old son, requested a hearing before the Board

and an award of act of duty death survivor benefit of 100% of salary. The Board dismissed Kelly's claim for lack of jurisdiction, ruling that her minor child did not qualify for a 100% act of duty benefit because he was not a surviving spouse. The Board awarded the officer's son the 50% minor children's survivor benefit, which he would receive until he reached the age of 18 years.

¶ 2    Kelly sought administrative review, and the circuit court reversed the Board's decision that the minor son was not entitled to apply for the 100% act of duty benefit. On remand, the Board held a hearing and ruled that Officer Masterton's death was not a result of a sickness, accident, or injury incurred in or resulting from the performance of an act of duty. Thus, the minor son was not entitled to receive a 100% act of duty benefit but was entitled to receive the 50% minor children's survivor benefit.

¶ 3    Kelly sought administrative review, and the circuit court affirmed the Board's decision.

¶ 4    On appeal, Kelly challenges the Board's denial of an act of duty benefit, arguing that attendance at roll call is an act of duty under the Illinois Pension Code and the Board abused its discretion by requiring Kelly to prove that an act of duty contributed to Officer Masterton's death.

¶ 5    Also on appeal, the Board and Village of Glenview (Village) argue that act of duty survivor benefits can only be awarded to a surviving spouse. In addition, the Village argues that the Board did not have jurisdiction to reopen and rehear its initial award decision.

¶ 6    For the reasons that follow, we reverse the circuit court's judgment that reversed the Board's initial decision that the minor son was not qualified to apply for the 100% act of duty benefit because he was not a surviving spouse.[1]

---

[1]In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

¶ 7                                    I. BACKGROUND

¶ 8      On the evening of December 6, 2014, Officer Masterton was sitting in a chair at a pre-shift roll call meeting inside the Glenview police station when he suffered a fatal cardiac arrhythmia triggered by lymphocytic myocarditis. At the time of his death, he had been in service as a police officer with 19 full years of creditable service. He was divorced, had not remarried, and had a 10-year-old son with his ex-wife, plaintiff Kelly Masterton, who is the guardian of their son's estate. The Board's secretary, Sergeant James Foley, completed a form to issue a survivor pension to Officer Masterton's son. Sergeant Foley checked the box on the form for "active-died off duty" to describe the nature of the incident and further wrote "at work—not 'line of duty' " on the form.

¶ 9      In January 2015, while the parties waited for the coroner's finding about the cause of Officer Masterton's death and whether it was duty related, Kelly's then-counsel sent an e-mail to the Board's counsel, asking if Kelly needed to submit an application. Kelly's counsel also asked if the Board would start payment of the undisputed 50% survivorship pension if Kelly's application requested both a duty and nonduty pension. In response, the Board's counsel stated that Kelly was not entitled to a spousal survivor benefit because the Mastertons were divorced at the time of the incident. The Board's counsel also requested documents to confirm the relationship between Officer Masterton and his minor son and stated that the Board could commence payment to the minor son on an interim basis without prejudice to any line of duty survivor claim. The Board's counsel added that it was not clear under section 3-112(e) of the Illinois Pension Code (40 ILCS 5/3-112(e) (West 2014)), whether a dependent child would be entitled to line of duty survivor benefits, and, in any event, Kelly bore the burden to establish that Officer Masterton's death resulted from an "act of duty."

¶ 10 On February 8, 2015, the Cook County medical examiner filed the coroner's report. The report indicated that the cause of Officer Masterton's death was lymphocytic myocarditis, which is commonly associated with a viral infection but can be caused by other infections and autoimmune diseases. This lymphocytic myocarditis produced heart muscle damage that led to an arrythmia and sudden death.

¶ 11 On February 16, 2015, Sergeant Foley wrote the Board's accountant that, after speaking with the Board's counsel, Sergeant Foley would ask the Board to approve the 50% survivor's benefit without prejudice to a future application from Kelly for a line of duty benefit because the 50% survivor's benefit was "the minimum benefit that would have to be paid in any case." If Kelly filed a future application, the Board would "deal with it at that time." Kelly, however, did not contact the Board to designate what type of pension her minor son was seeking.

¶ 12 The Board met on February 18, 2015. According to the meeting minutes, the Board stated that the 50% survivorship benefits would go to Officer Masterton's son until he turned 18 years old. A motion was made and seconded "to approve and start the benefit process at 50% (without prejudice) pending attorney approval." The Board's April 30, 2015, meeting minutes indicate that the Board deferred acting on the pension decision pending instructions from the Board's counsel, who also needed to submit an opinion on whether Officer Masterton's death would be considered a line of duty death.

¶ 13 On June 2, 2015, Sergeant Foley sent an e-mail to Kelly, stating that he had received the legal opinion from the Board's counsel and wished to start the minor son's checks at that time. Sergeant Foley instructed Kelly to complete two attached forms and send them to the Board's accountant. As soon as the process was completed, the Board would "deposit the catch-up check

and get the monthly annuity started." In June 2015, the Board, pursuant to section 3-112(c) of the Illinois Pension Code (*id.* § 3-112(c)), began payments of a survivor's annuity, representing 50% of Officer Masterton's final salary, to his minor son, retroactive to February 2015. According to the Board's October 28, 2015 meeting minutes, the Board would ask its counsel to speak to the Board "on the Masterton dependent application and the final action on the pension payout process."

¶ 14    On February 3, 2017, Kelly filed with the Board a request for a line of duty survivor pension under section 3-112(e) of the Illinois Pension Code.[2] In April 2017, the Village moved to intervene in this matter. The Village also moved to dismiss Kelly's application, arguing that (1) line of duty survivor benefits under section 3-112(e) of the Illinois Pension Code can only be awarded to a surviving spouse and (2) the Board lacked jurisdiction to reopen and rehear its June 2015 award of a nonduty survivorship pension to Officer Masterton's minor son.

¶ 15    In August 2017, the Board granted the Village's motion to intervene. On February 13, 2018, the Board issued a written decision that partially granted the Village's motion to dismiss Kelly's application. Specifically, the Board dismissed Kelly's claim for surviving spouse line of duty death benefits based on lack of jurisdiction because Kelly's minor son did not qualify as a surviving spouse under section 3-112(e) of the Illinois Pension Code. However, the Board rejected the Village's alternative argument that the Board lacked jurisdiction, based upon its interim payment of nonduty survivor benefits, to consider Kelly's claim for a line of duty pension benefit. The Board awarded the minor son the minor children's 50% survivor benefit under section 3-

---

[2]According to the record, Kelly's request erroneously referenced section 3-114.1(a) of the Illinois Pension Code (40 ILCS 5/3-114.1(a) (West 2014)), which refers to duty disability pensions and is not relevant in this matter.

112(c) of the Illinois Pension Code, which would be paid until he reached the age of 18 years. The Board did not address causation or whether Officer Masterton's death was from an act of duty.

¶ 16    Kelly filed a timely petition for review, and, on March 22, 2019, the circuit court reversed and remanded the Board's February 13, 2018 decision. The court ruled that the Board misinterpreted the law because the statute, considered as a whole, intended to craft a single comprehensive scheme for the payment of surviving pension benefits, all of which, including section 3-112(e)'s line of duty benefits, are payable to survivors in the order of priority first to spouses, then to unmarried or dependent children, and then to the officer's dependent parents. The Village and Board filed an interlocutory petition for leave to appeal with this court, which was denied in May 2019.

¶ 17    On remand, the Board in July 2019 held a hearing to identify potential documents that would be admitted into evidence on the issue of whether Officer Masterton's death was a result of sickness, accident, or injury incurred in or resulting from an act of duty within the meaning of section 3-112(e) of the Illinois Pension Code. The Board also determined that it would retain three physicians to conduct independent medical reviews of all reports obtained and issue medical reports opining on whether an act of duty contributed to Officer Masterton's death. After the records were received and the three Board physicians had issued their reports, a hearing was conducted on July 30, 2020.

¶ 18    Plaintiff submitted medical opinions by J. Scott Denton M.D.; William J. Oetgen, M.D.; and Stuart Feldman, D.O.

¶ 19    Dr. Denton's letterhead indicated that he is certified by the American Board of Pathology in forensic, anatomic, and clinical pathology. He submitted a letter to the

McLean County Sheriff's Office regarding his opinion on the cause of Officer Masterton's death and whether it would fall within the criteria established under the bylaws of the Illinois Police Memorial Committee for a line of duty death. That committee's bylaws and standards are different from the standards of the Illinois Pension Code. Dr. Denton opined that Officer Masterton's physical exertion while on-duty hours before he died aggravated or caused further recent heart cell death in the setting of his underlying myocarditis. "This microscopically identified recent heart cell death likely caused his sudden fatal cardiac arrhythmia hours after the physical on-duty event noted in the police report. Therefore, his stressful physical on-duty exertion and his sudden cardiac death are medically related."

¶ 20    Dr. Oetgen did not provide a curriculum vitae or indicate his field of practice or certification. He rendered an independent medical record review opinion for a claim for federal benefits (Public Safety Officers' Death, Disability, and Educational Assistance Benefit Claims (28 C.F.R. § 32.0 *et seq.* (2008))). However, the legal standards governing this federal benefit differ from the standard in the Illinois Pension Code (compare *id.*, with 40 ILCS 5/1-101 *et seq.* (West 2014)). In rendering his opinion, Dr. Oetgen addressed the federal definition of a heart attack as defined in 28 C.F.R. § 32.3 (2008). Dr. Oetgen opined that, although Officer Masterton's death did not fit the definition of "myocardial infarction" under section 32.3, his death fit the definition of a "cardiac-event," which includes a pathological condition of the heart like lymphocytic myocarditis. *Id.*

¶ 21    Dr. Feldman listed his credentials as a Doctor of Osteopathic Medicine and a fellow of the American College of Emergency Physicians. His letter opined that, based on the available records,

the cause of Officer Masterton's death was directly related to his duties as an officer with the Glenview Police Department. Dr. Feldman wrote that Officer Masterton's

"shift-work left him susceptible to viral illness, which in turn had an uncommon but well-known cardiac complication. The inherent stress of his occupation may have increased his overall risk of cardiac events. Slight delays in optimal care at the time of his event are attributed to the uniform required to be worn while on-duty and likely contributed to his death. Delay in obtaining a definite airway by EMS providers likely limited the resuscitation efforts due to the prolonged hypoxia. Ultimately, his death should be considered as a death in the line of duty."

Dr. Feldman did not indicate which standard of law or legal definition he used to determine what constituted a death in the line of duty.

¶ 22    The Board's independent medical examiners were Mark Lampert, M.D.; Richard Feeley, D.O.; and Timothy McDonough, M.D.

¶ 23    Dr. Lampert is a licensed physician and surgeon in Illinois and Indiana. He has multiple board certifications, including from the National Board of Medical Examiners, the American Board of Internal Medicine for Internal Medicine, the American Board of Internal Medicine for Cardiovascular Disease, and the Certification Council in Nuclear Cardiology. In his report, he opined within a reasonable degree of medical certainty that Officer Masterton's death was not the result of sickness, accident, or injury incurred in or resulting from performance of an act of duty. Although Officer Masterton was present on the job for roll call during the moment of his sudden death, he was not performing an act of duty. He died from a lethal cardiac arrhythmia (ventricular fibrillation), triggered by a case of asymptomatic lymphocytic myocarditis eventually found at

autopsy. Dr. Lampert explained that myocarditis is an inflammatory disease of the heart that can often go undetected, and its initial presenting symptom can be sudden cardiac death due to a lethal cardiac arrhythmia.

¶ 24    Dr. Lampert discounted a review article that suggested a link between shift work and cardiovascular disease. He stated that the article did not suggest shift workers were at increased risk of lymphocytic myocarditis specifically but referred to an increased risk of coronary disease and myocardial infarction, neither of which was found at the time of Officer Masterton's autopsy. Dr. Lampert disagreed with the opinion of plaintiff's physician, Dr. Feldman, who opined that shift work had a causal relationship to Officer Masterton's death. Dr. Lampert stated that shift work is a common occurrence and lymphocytic myocarditis is not, so any attempt to suggest causation in this case was not appropriate.

¶ 25    Dr. Feely is a licensed physician in Indiana, Missouri, Illinois, and Florida. He holds several board certifications, including from the American Board of Osteopathic Family Practice, the American Board of Disability Evaluating Physicians, the American Osteopathic Board of Special Proficiency in Manipulative Medicine, the American Board of Forensic Examiners, the American Board of Quality Assurance and Utilization Review Physicians, the American Board of Independent Medical Examiners, and the American Board of Medical Acupuncture.

¶ 26    In his report, Dr. Feely concluded that Officer Masterton's death of lymphocytic myocarditis, pulmonary congestion and ventricular tachycardia was not a result of sickness, accident, or injury incurred in or resulting from the performance of an act of duty. Officer Masterton's cardiac condition occurred while he was on duty but not as a result of injury, accident, or sickness that was documented to have occurred in the act of duty. If he had a sickness, it was

neither diagnosed and temporally related to his job nor treated immediately prior to his December 6, 2014 cardiac arrest.

¶ 27    Dr. Feely noted that Officer Masterton was diagnosed with a right bundle branch block in 2011 and addressed claims that working the night shift for years may have contributed to his obesity and stress. Dr. Feely commented that although evidence documented Officer Masterton's obesity, there was minimal evidence documenting his stress. Dr. Feely also noted that Officer Masterton's pre-existing right bundle branch block of his heart may have been caused by a virus, bacteria, or fungi, but there was no proof any of these things occurred in an act of duty.

¶ 28    Dr. Feely opined that the cause of Officer Masterton's death—lymphocytic myocarditis—was natural and not temporally or causatively related to an act of duty while working for the Glenview Police Department. Dr. Feely concluded that his opinion was reasonably and directly related to the documentation provided, the evidence found in peer reviewed scientific literature, and his own knowledge, skills and abilities as a board-certified osteopathic physician.

¶ 29    Dr. Timothy McDonough is licensed by the National Board of Medical Examiners and is board certified by the American Board of Internal Medicine in internal medicine, cardiovascular disease, and interventional cardiology. In his report, he opined that the death of Masterton, a 42-year-old white male, was due to lymphocytic myocarditis, which is most commonly associated with a viral infection (but can be caused by other infections and autoimmune diseases) and produced damage to cardiac myocytes (heart muscle), leading to an arrhythmia and sudden death. The manner of Officer Masterton's death was natural.

¶ 30    The Village submitted the medical report of Peter A. Santucci, M.D., a Fellow of the American College of Cardiology, the American Heart Association, and the Heart Rhythm Society.

He is a professor of medicine at Loyola University Medical Center. Dr. Santucci concluded that Officer Masterton's death resulted from lymphocytic myocarditis, which likely was caused by a virus. Dr. Santucci disagreed with Dr. Feldman's claim that shift work created a higher risk for myocarditis. Dr. Santucci stated that the studies referenced an increase in cardiovascular disease and myocardial infarction, which is different from myocarditis. Dr. Santucci concluded that "it was not possible to determine whether or to what degree Officer Masterton's death was work related."

¶ 31    On November 10, 2020, the Board issued its decision and order on remand. The Board concluded that Officer Masterton's death was due to lymphocyte myocarditis, leading to arrhythmia and sudden death, and was not a line of duty death under section 3-112(e) of the Illinois Pension Code. The Board determined that Kelly had not met her burden to show a causal link between the roll call and Officer Masterton's death. Furthermore, even if there was some tenuous link between the fatal incident and Officer Masterton's attendance at a roll call meeting, attending roll call did not constitute an "act of police duty inherently involving special risk, not ordinarily assumed by a citizen in the ordinary walks of life" as required under section 5-113 of the Illinois Pension Code (40 ILCS 5/5-113 (West 2014)). In addition, Kelly failed to provide any evidence to show that attendance at roll call was required by Illinois law or the ordinances or rules and regulations of the Glenview Police Department or by a special assignment, or that it was an act of heroism as required under section 5-113 of the Illinois Pension Code. The Board concluded that Officer Masterton's minor son was a dependent child and entitled to continue his dependent children's survivor benefits under section 3-112(c) until he attained the age of 18.

¶ 32    Kelly timely petitioned for administrative review. On February 2, 2022, the circuit court denied Kelly's complaint for administrative review and affirmed the Board's November 10, 2020 decision. Kelly timely appealed.

¶ 33                                    II. ANALYSIS

¶ 34                                    A. Jurisdiction

¶ 35    The Village argues that the Board did not have jurisdiction in 2017 to reopen and rehear its 2015 decision to award Officer Masterton's son a 50% nonduty pension under section 3-112(c) of the Illinois Pension Code. Specifically, the Village argues that the Board did not have the authority to award benefits on an interim basis without prejudice, so the Board's 2015 decision constituted a final administrative decision that Kelly failed to challenge within the requisite 35-day time period. According to the Village, irrespective of the Board's alleged lack of authority to award benefits on an interim basis, the Board finalized its decision in June 2015 when it began to pay the nonduty benefits and told Kelly in a June 2, 2015, e-mail from Sergeant Foley that the Board was awarding a nonduty benefit. The Village argues that Kelly had 35 days from June 2, 2015, *i.e.*, the date she received notice of the Board's final administrative action, to seek review of that decision. Accordingly, the Village asserts that Kelly's February 2017 application to reopen this matter was untimely and improper as a matter of law.

¶ 36    In analyzing whether the Board had jurisdiction in 2017 to review Kelly's request for a line-of-duty pension benefit, we must first determine whether the Board's initial decision in 2015 constituted a final administrative decision. Because this jurisdictional issue presents a question of law, our review is *de novo*. *Blount v. Stroud*, 232 Ill. 2d 302, 308-09 (2009).

¶ 37   The Board is governed by article 3 of the Illinois Pension Code, which regulates and establishes the powers of police pension boards in municipalities, such as Glenview, where the population is between 5000 and 500,000 inhabitants. 40 ILCS 5/3-103 (West 2014). The powers and duties of the Board include the power to control and manage the pension fund, to order the payment of pensions and other benefits and issue certificates stating the amount and purpose of the payment, and to make necessary rules and regulations in conformity with the provisions of article 3 of the Illinois Pension Code. *Id.* §§ 3-131 to 3-140.1.

¶ 38   Section 3-148 of the Illinois Pension Code provides that the Administrative Review Law governs the review of final Board decisions. *Id.* § 3-148; *Sola v. Roselle Police Pension Board*, 342 Ill. App. 3d 227, 230 (2003). "Because the Pension Code provides that decisions of pension boards are subject to the Administrative Review Law, the board's decisions can be reviewed only pursuant to that law." *Sola*, 342 Ill. App. 3d at 230. Section 3-103 of the Administrative Review Law provides, in pertinent part, that "[e]very action to review a final administrative decision shall be commenced by the filing of a complaint and the issuance of summons within 35 days from the date that a copy of the decision sought to be reviewed was served upon the party affected by the decision." 735 ILCS 5/3-103 (West 2014). This 35-day limit is jurisdictional. As such, pension boards lack the authority to reconsider final decisions beyond the expiration of the 35-day period. *Sola*, 342 Ill. App. 3d at 230. Furthermore, section 10-50(a) of the Illinois Administrative Procedure Act requires agencies to notify parties or their agents "personally or by registered or certified mail of any decision or order." 5 ILCS 100/10-50(a) (West 2014). Thus, mailing a decision to a party starts the jurisdictional clock.

¶ 39    The term *administrative decision* or *decision* "means any decision, order or determination of any administrative agency rendered in a particular case, which affects the legal rights, duties or privileges of parties and which terminates the proceedings before the administrative agency." 735 ILCS 5/3-101 (West 2014). However, these terms do not

> "include rules, regulations, standards, or statements of policy of general application issued by an administrative agency to implement, interpret, or make specific the legislation enforced or administered by it unless such a rule, regulation, standard or statement of policy is involved in a proceeding before the agency and its applicability or validity is in issue in such a proceeding." *Id.*

Final administrative decisions usually follow from (1) some type of application, *i.e.*, retirement, disability, survivor, or refund, (2) an adversarial process involving the parties affected, (3) a hearing on controverted facts, (4) an ultimate disposition rendered by an impartial factfinder, and (5) the Board informing the applicant or party affected in writing of its actions. *Fields v. Schaumburg Firefighters' Pension Board*, 383 Ill. App. 3d 209, 220 (2008); *Key Outdoor Inc. v. Department of Transportation*, 322 Ill. App. 3d 316, 324 (2001); see *Grimm v. Calica*, 2017 IL 120105, ¶ 26 (mother's failure to timely seek judicial review did not deprive trial court of jurisdiction because administrative agency failed to provide due process to mother by failing to inform her that her 35-day limitation period runs from the date the decision was mailed, not from the date it was received).

¶ 40    The record establishes that Kelly and the Board agreed in February 2015 that there was no dispute that Officer Masterton's minor son was entitled, at a minimum, to a 50% survivor's nonduty pension benefit. Accordingly, Kelly and the Board agreed that the Board would begin

paying the minor son the nonduty benefit on an interim basis without prejudice to any claim for a line of duty pension benefit while the parties waited for the coroner's report on the cause of Officer Masterton's death. After the Board received approval from its counsel, it began to pay the nonduty benefit in June 2015, retroactive to February 2015. Sergeant Foley's June 2, 2015 e-mail to Kelly merely informed her that the Board would begin paying her son the undisputed minimum pension when she completed and submitted some forms and as "soon as the process was completed." Furthermore, as late as October 28, 2015, the Board was seeking input from its counsel regarding "the Masterton dependent application and the final action on the pension payout process."

¶ 41    The Board did not take definitive action in 2015 on a claim for pension benefits because the Board expressly informed Kelly that it would pay the undisputed minimum pension her son was entitled to under the Illinois Pension Code on an interim basis and without prejudice to a future request from Kelly for line of duty benefits. Furthermore, the Board's 2015 decision did not terminate the proceedings before the administrative agency because Kelly did not commence any proceedings until she applied for line of duty benefits in 2017. In addition, no adversarial process involving the parties occurred, no hearing on controverted facts was held, and no ultimate disposition was rendered by an impartial factfinder. Moreover, Kelly was not placed on notice that the interim decision was final and subject to administrative review, which notice failure would have violated her due process rights. Therefore, we conclude that the Board had jurisdiction in 2017 to consider Kelly's request for an award of line of duty benefits because the Board did not render a final administrative decision in 2015.

¶ 42                    B. Section 3-112(e) Surviving Spouse Benefit

¶ 43    The Board and Village argue that the circuit court erred when it reversed the Board's

decision that Officer Masterton's minor son did not qualify for line of duty benefits under section

3-112(e) of the Illinois Pension Code because he was not a surviving spouse. The Board and

Village argue that under the well-established canons of statutory construction, when all the

provisions of section 3-112 are read together, the legislature clearly did not intend to award duty-

related benefits under section 3-112(e) to anyone other than a surviving spouse.

¶ 44    Kelly responds that the Board's determination that her minor son did not qualify for

benefits under section 3-112(e) violated the spirit and intent of the Illinois Pension Code and was

inconsistent with the language of the statute, which should be construed liberally to favor her son.

¶ 45    We review the decision of the administrative agency rather than the decision of the circuit

court. *Wade v. City of North Chicago Police Pension Board*, 226 Ill. 2d 485, 504 (2007). A finding

on a question of law by an administrative agency is not binding on a reviewing court. *City of

Freeport v. Illinois State Labor Relations Board*, 135 Ill. 2d 499, 507 (1990). Statutory

interpretation is a question of law, and an agency's interpretation is relevant, but it is not binding

on the courts. *Branson v. Department of Revenue*, 168 Ill. 2d 247, 254 (1995). In interpreting a

statute, the court's objective is to ascertain and give effect to the intent of the legislature, and the

most reliable indicator of legislative intent is the language of the statute. *Boaden v. Department of

Law Enforcement*, 171 Ill. 2d 230, 237 (1996). Statutory language must be given its plain and

ordinary meaning. *Id.* Statutory language that is clear must be interpreted according to its terms,

without aids of construction. *Branson*, 168 Ill. 2d at 254. The construction of a statute is an issue

of law that is reviewed *de novo* on appeal. *Boaden*, 171 Ill. 2d at 237. The decision of an

administrative agency will be reversed if it is legally erroneous. *Jagielnik v. Board of Trustees of the Police Pension Fund*, 271 Ill. App. 3d 869, 875 (1995). Reviewing courts may not rubber-stamp administrative decisions that are inconsistent with statutory mandates or that frustrate statutory policy. *City of Freeport*, 135 Ill. 2d at 516. Provisions of a police pension plan are to be construed liberally in favor of those to be benefited. *Iwanski v. Streamwood Police Pension Board*, 232 Ill. App. 3d 180, 185 (1992). However, a court, "under the guise of statutory interpretation, [cannot] 'correct' an apparent legislative oversight by rewriting a statute in a manner inconsistent with its clear and unambiguous language." *In re Marriage of Murphy*, 203 Ill. 2d 212, 219 (2003).

¶ 46    The statute at issue is section 3-112 of the Illinois Pension Code, entitled "Pension to survivors," which provides, in part:

"(a) Upon the death of a police officer entitled to a pension under Section 3-111, the surviving spouse shall be entitled to the pension to which the police officer was then entitled. Upon the death of the surviving spouse, or upon the remarriage of the surviving spouse if that remarriage terminates the surviving spouse's eligibility under Section 3-121, the police officer's unmarried children who are under age 18 or who are dependent because of physical or mental disability shall be entitled to equal shares of such pension. If there is no eligible surviving spouse and no eligible child, the dependent parent or parents of the officer shall be entitled to receive or share such pension until their death or marriage or remarriage after the death of the police officer.

* * *

(b) Upon the death of a police officer while in service, having at least 20 years of creditable service, or upon the death of a police officer who retired from service with at

least 20 years of creditable service, whether death occurs before or after attainment of age 50, the pension earned by the police officer as of the date of death as provided in Section 3-111 shall be paid to the *survivors in the sequence provided in subsection (a) of this Section*.

(c) Upon the death of a police officer while in service, having at least 10 but less than 20 years of service, a pension of 1/2 of the salary attached to the rank or ranks held by the officer for one year immediately prior to death shall be payable to the *survivors in the sequence provided in subsection (a) of this Section*. If death occurs as a result of the performance of duty, the 10 year requirement shall not apply and the pension to survivors shall be payable after any period of service.

\*\*\*

(e) The pension of the *surviving spouse* of a police officer who dies (i) on or after January 1, 2001, (ii) without having begun to receive either a retirement pension payable under Section 3-111 or a disability pension payable under Section 3-114.1, 3-114.2, 3-114.3, or 3-114.6, and (iii) as a result of sickness, accident, or injury incurred in or resulting from the performance of an act of duty shall not be less than 100% of the salary attached to the rank held by the deceased police officer on the last day of service, notwithstanding any provision of this Article to the contrary." (Emphasis added.) 40 ILCS 5/3-112(e) (West 2014).

¶ 47    Subsection 3-112(a) sets forth the survivor sequence, which consists first of the deceased officer's surviving spouse, then the officer's unmarried minor children or dependent children, and finally the officer's dependent parent(s). Subsections 3-112(b) and (c) then refer back to the

survivor sequence of subsection 3-112(a). However, subsection 3-112(e) does not make any reference to the survivor sequence. The plain language of subsection 3-112(e) clearly states that it is applicable only to the deceased officer's surviving spouse. When the legislature uses certain language in one section of a statute and different language in another part, courts assume that the legislature intended different meanings. *Illinois State Treasurer v. Illinois Workers' Compensation Comm'n*, 2015 IL 117418, ¶ 28. "[N]o rule of construction authorizes [a court] to declare that the legislature did not mean what the plain language of the statute imports [citation], nor may [a court] rewrite a statute to add provisions or limitations the legislature did not include [citation]." *Id.* The legislature clearly knew how to refer to the survivor sequence when it wanted to do so. The fact that the legislature omitted the reference to the survivor sequence in subsection 3-112(e) shows that the legislature intended that only a surviving spouse could benefit from the duty-related survivorship pension under that subsection.

¶ 48   We conclude that Officer Masterton's minor son does not qualify for benefits under section 3-112(e) because he is not a surviving spouse and, thus, is not eligible to apply for section 3-112(e) benefits. Because our conclusion is dispositive of Kelly's claim for line of duty benefits, we do not reach the merits of her claims challenging the Board's (1) determination that Officer Masterton's participation in roll call did not constitute an act of duty within the meaning of the Illinois Pension Code, (2) alleged misapplication of a disability pension framework to a line of duty death pension matter, and (3) imposition on Kelly of the burden to prove a causal connection between the alleged act of duty and the cause of death.

¶ 49                                    III. CONCLUSION

¶ 50     For the foregoing reasons, we reverse the March 22, 2019, order of the circuit court reversing the Board's February 13, 2018, dismissal of Kelly's application for act of duty benefits and, pursuant to Illinois Supreme Court Rule 366(a)(5) (eff. Feb. 1, 1994), enter judgment affirming that Board decision. We vacate the Board's November 10, 2020, decision on remand and the circuit court's February 2, 2022 judgment affirming that decision.

¶ 51     Circuit court judgment reversed in part and vacated in part.

¶ 52     Board decision affirmed in part and vacated in part.

*Masterton v. Village of Glenview Police Pension Board*, 2022 IL App (1st) 220307

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 18-CH-3503; the Hon. David B. Atkins, Judge, presiding. |
| **Attorneys for Appellant:** | David M. Stepanich, of Gurnee, for appellant. |
| **Attorneys for Appellee:** | Richard J. Reimer, of Reimer Dobrovolny & LaBardi PC, of Hinsdale, for appellee Village of Glenview Police Pension Board.<br><br>Paul A. Denham and James J. Powers, of Clark Baird Smith LLP, of Rosemont, for other appellee. |