2023 IL App (4th) 220816

NO. 4-22-0816

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
May 1, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE CITY OF EAST PEORIA, ILLINOIS, a Municipal Corporation, | ) ) | Appeal from the Circuit Court of |
| Plaintiff-Appellant, | ) | Tazewell County |
| v. | ) | No. 20MR232 |
| THE BOARD OF TRUSTEES OF THE POLICE | ) | |
| PENSION FUND OF THE CITY OF EAST PEORIA, an | ) | |
| Administrative Agency; WILLIAM McWHIRTER, in | ) | |
| His Official Capacity as President of the Board of | ) | |
| Trustees of the Police Pension Fund of the City of East | ) | Honorable |
| Peoria; and CHAD LaCOST, | ) | Paul E. Bauer, |
| Defendants-Appellees. | ) | Judge Presiding. |

PRESIDING JUSTICE DeARMOND delivered the judgment of the court, with opinion.
Justices Steigmann and Knecht concurred in the judgment and opinion.

**OPINION**

¶ 1     In April 2022, the Board of Trustees of the Police Pension Fund of the City of East Peoria, Illinois (Board), granted Chad LaCost a pension, based on the salary attached to LaCost's former rank of deputy chief, which he held for three months during his final year of service. Shortly thereafter, plaintiff, the City of East Peoria, Illinois (City), filed a complaint for administrative review of the Board's decision, alleging LaCost's pension benefits should have been calculated based on an average of the actual salary he received over the course of his final year. Ultimately, the circuit court affirmed the Board's decision.

¶ 2　　　　The City appeals, arguing the Board misconstrued section 3-111(a) of the Illinois Pension Code (40 ILCS 5/3-111(a) (West 2020)) when it approved LaCost's pension and contends the statute's plain language establishes that pension benefits should be based on an average of the actual "wages received by an officer during his or her last year." For the following reasons, we reverse the circuit court's judgment; vacate the Board's decision granting LaCost a pension based upon the salary attached to deputy chief, the highest rank LaCost earned during his final year of employment; and remand the cause with directions.

¶ 3　　　　　　　　　　　　　　I. BACKGROUND

¶ 4　　　　The facts material to the resolution of this case are not in dispute. LaCost became an officer with the East Peoria police department on October 7, 1996. In September 2019, LaCost was promoted from sergeant to deputy chief. In December 2019, LaCost's appointment as deputy chief was terminated, and he reassumed the rank of sergeant. In March 2020, LaCost's hourly rate of pay was increased to reflect an annual longevity adjustment to his salary.

¶ 5　　　　In a letter, dated August 25, 2020, LaCost announced his decision to resign from his position as sergeant effective October 8, 2020, and requested his pension benefits be "determined by the highest rate of pay within the last year." LaCost's pension benefits were later approved during a Board meeting in September 2020 and were calculated, based on his former rank of deputy chief pursuant to section 3-111(a) of the Pension Code (40 ILCS 5/3-111(a) (West 2020)).

¶ 6　　　　On October 30, 2020, the City filed a complaint, seeking administrative review of the Board's decision. In February 2021, the parties entered into to an agreed order whereby the matter was to be remanded to the Board to conduct a new hearing with respect to the calculation of LaCost's pension benefits. The order also indicated that the circuit court "retain[ed]

jurisdiction to conduct an administrative review of the written decision of the *** Board following remand," and any party wishing to object to the Board's decision was required to file a request for administrative review within 14 days of the decision.

¶ 7        A hearing on LaCost's application for pension benefits was held in December 2021. On April 19, 2022, the Board entered its decision and order reapproving LaCost's request that his pension benefits be based on his former rank of deputy chief. In doing so, the Board reasoned that section 3-111(a) of the Pension Code protected against a diminishment in pension benefits for an officer "who is demoted after paying into the pension fund 9.91% of the officer's salary ***, provided that officer retires within one year of a demotion."

¶ 8        On April 20, 2022, the City again sought administrative review in the circuit court. Ultimately, the court found the Board's decision was proper and LaCost was entitled to pension benefits based on his former rank of deputy chief.

¶ 9        This appeal followed.

¶ 10                              II. ANALYSIS

¶ 11        On appeal, the sole issue before this court is whether the Board misconstrued section 3-111(a) of the Pension Code (40 ILCS 5/3-111(a) (West 2020)) when it granted LaCost a pension based upon the salary attached to the rank of deputy chief, a rank he held for approximately three months. The City argues the most natural reading of the statute establishes that an officer's pension should be based on the salary attached to the rank held on the last day of service or "the salary received during the one-year period prior to the last day of service," whichever is greater. The City contends this is so because "salary has a commonsense meaning—it is the wages received by an officer during his or her last year." Thus, the City asserts that, if an officer's rank changes during his last year, his "salary for purposes [ ]of

calculating his retirement benefits should reflect his average (actual) wages in his last year of service."

¶ 12    On the other hand, the Board and LaCost (collectively, defendants) argue that the Board's decision was proper and contend that nothing within section 3-111(a) contemplates "an average or proration of salaries for the purposes of awarding pension benefits." Rather, according to defendants, the plain language the legislature chose "ensured retiring police officers would be treated equally and free from the whims of management by securing the greatest retirement benefit [the officer] would be eligible for during the last year of employment." As a result, defendants maintain that section 3-111(a) establishes "a retiring police officer is awarded benefits based on the highest 'salary attached to rank' earned during the last year of employment."

¶ 13    A reviewing court, when deciding an appeal from a judgment in an administrative review proceeding, reviews the administrative agency's decision, not the circuit court's decision, and will reverse where the agency's decision is legally erroneous. *Masterton v. Village of Glenview Police Pension Board*, 2022 IL App (1st) 220307, ¶ 45. "Interpretation of a statute is a question of law where the agency's interpretation is considered relevant but not binding on the court." *Springfield School District No. 186 v. Department of Revenue*, 384 Ill. App. 3d 715, 719, 893 N.E.2d 1042, 1047 (2008). "The construction of a statute is an issue of law that is reviewed *de novo* on appeal." *Masterton*, 2022 IL App (1st) 220307, ¶ 45.

¶ 14    "The cardinal rule of statutory interpretation is to determine and give effect to the intent of the legislature." *Miller v. Sarah Bush Lincoln Health Center*, 2016 IL App (4th) 150728, ¶ 10, 56 N.E.3d 599. "The most reliable indicator of legislative intent is the language of the statute, given its plain and ordinary meaning." *Bank of New York Mellon v. Laskowski*, 2018

IL 121995, ¶ 12, 104 N.E.3d 1145; see *Kloeppel v. Champaign County Board*, 2021 IL App (4th) 210091, ¶ 15, 186 N.E.3d 1094 (stating "the specific words the legislature chose to use are the best evidence of legislative intent"), *aff'd*, 2022 IL 127997. " 'When the language is unambiguous, the statute must be applied as written without resorting to other aids of construction.' " *Howard v. Weitekamp*, 2015 IL App (4th) 150037, ¶ 14, 57 N.E.3d 499 (quoting *Moore v. Green*, 219 Ill. 2d 470, 479, 848 N.E.2d 1015, 1020 (2006)). This court "must construe the statute so that each word, clause, and sentence, if possible, is given a reasonable meaning and not rendered superfluous [citation], avoiding an interpretation which would render any portion of the statute meaningless or void." (Internal quotation marks omitted.) *Cooke v. Illinois State Board of Elections*, 2019 IL App (4th) 180502, ¶ 56, 146 N.E.3d 31. Reviewing courts, in interpreting a statute, "view all provisions of an enactment as a whole," taking care not to isolate words and phrases but reading them "in light of other relevant provisions of the statute." *Michigan Avenue National Bank v. County of Cook*, 191 Ill. 2d 493, 504, 732 N.E.2d 528, 535 (2000). With these principles in mind, we turn to the disputed statute, section 3-111(a) of the Pension Code.

¶ 15 Because it has a population of less than 500,000, the City is governed by article 3 of the Pension Code (40 ILCS 5/art. 3 (West 2020)). Pursuant to section 3-111(a),

> "A police officer age 50 or more with 20 or more years of creditable service, who is not a participant in the self-managed plan under Section 3-109.3 and who is no longer in service as a police officer, shall receive a pension of 1/2 of the salary attached to the rank held by the officer on the police force for one year immediately prior to retirement or, beginning July 1, 1987 for

persons terminating service on or after that date, the salary attached to the rank held on the last day of service or for one year prior to the last day, whichever is greater." 40 ILCS 5/3-111(a) (West 2020).

Section 3-125.1 of the Pension Code (40 ILCS 5/3-125.1 (West 2020)) specifies that a certain percentage of a police officer's salary is deducted for pension contributions. The second paragraph of that section, unchanged since at least 1987 (Ill. Rev. Stat. 1987, ch. 108 1/2, ¶ 3-125.1), defines "salary." It provides, in relevant part, " 'Salary' means the annual salary, including longevity, attached to the police officer's rank, as established by the municipality's appropriation ordinance ***." 40 ILCS 5/3-125.1 (West 2020). The requirement that a police officer's pension under article 3 of the Pension Code be determined by the salary attached to the officer's rank is further emphasized in section 4402.30 of Title 50 of the Illinois Administrative Code (50 Ill. Adm. Code 4402.30 (1996)). In pertinent part, section 4402.30 provides, "Salary is received regularly and is attached to the rank *** to which the *** officer is assigned." 50 Ill. Adm. Code 4402.30 (1996). In other words, salary is attached to the rank *held* by the officer. We note this interpretation is reinforced when reading the Pension Code as a whole. See, *e.g.*, 40 ILCS 5/3-111(a), (b), (c); 3-112(c), (e); 3-114.1(a); 3-114.6(c); 4-109(a); 4-110; 4-111; 4-113(b); 4-114(i), (j); 4-117(b) (West 2020).

¶ 16        In the present appeal, defendants argue that section 3-111(a) provides two methods for calculating pension benefits—"first, the salary attached to rank held on the last day of service, or second, the salary attached to rank for one year prior to the last day, whichever is greater." Defendants reason these alternatives intentionally achieve the same result—that "a retiring police officer is awarded benefits based on the highest 'salary attached to rank' earned

during the last year of employment." However, defendants' argument on this point is untenable because it would require us to interpret section 3-111(a) in a manner other than the way it was written. *Rosewood Care Center, Inc. v. Caterpillar, Inc.*, 226 Ill. 2d 559, 567, 877 N.E.2d 1091, 1096 (2007). Moreover, defendants do not accurately quote the statute.

¶ 17 "The best evidence of the legislature's intent is the specific words it used." *Kloeppel*, 2021 IL App (4th) 210091, ¶ 29. In looking at its plain language, section 3-111(a) establishes that police officers terminating service on or after July 1, 1987, shall receive a pension of one-half "the salary attached to the rank held on the last day of service or for one year prior to the last day, whichever is greater." 40 ILCS 5/3-111(a) (West 2020). Put differently, a police officer retiring on or after July 1, 1987, shall receive a pension of (1) one-half the salary attached to the rank held on the last day of service or (2) one-half the salary attached to the rank held for one year prior to the last day, whichever is greater. Although poorly worded, section 3-111(a) is not ambiguous, and "[l]anguage free from ambiguity and doubt will be given effect even if the consequences are harsh, absurd, or unwise." *Village of Chatham v. County of Sangamon*, 351 Ill. App. 3d 889, 894, 814 N.E.2d 216, 222 (2004). Perhaps the legislature intended for retiring police officers to receive pension benefits based on the salary attached to the highest rank earned at any point during an officer's final year of employment, but it did not convey such intention with the plain language it used in section 3-111(a). See 40 ILCS 5/3-111(a) (West 2020). It is well settled that reviewing courts "may not depart from the plain language of the statute and read into it exceptions, limitations, or conditions that are not consistent with the express legislative intent." *Hendricks v. Board of Trustees of the Police Pension Fund*, 2015 IL App (3d) 140858, ¶ 14, 38 N.E.3d 969. Yet, despite this constraint, defendants ask this court to stretch even further and conclude the legislature did not mean what it

said, which we cannot do. See *Laborer's International Union of North America, Local 1280 v. Illinois State Labor Relations Board*, 154 Ill. App. 3d 1045, 1058, 507 N.E.2d 1200, 1209 (1987) ("No rule of construction authorizes a court to decide that the legislature did not mean what the plain statutory language imports."). Furthermore, defendants' interpretation of section 3-111(a) would render the word "held" and the phrase "on the last day of service or for one year prior to the last day" in the statute meaningless, which is disfavored. See *Cooke*, 2019 IL App (4th) 180502, ¶ 56 (reviewing courts "must construe the statute so that each word, clause, and sentence, if possible, is given a reasonable meaning and not rendered superfluous" (internal quotation marks omitted)).

¶ 18       Nor are we persuaded by the City's argument that, in the event of a rank change, an officer's pension benefits ought to reflect an average of the monthly salary received over the course of his or her last year of service. " 'When the legislature includes particular language in one section of a statute but omits it in another section of the same statute, courts presume that the legislature acted intentionally and purposely in the inclusion or exclusion [citations], and that the legislature intended different meanings and results [citations].' " *People v. Clark*, 2019 IL 122891, ¶ 23, 135 N.E.3d 21 (quoting *Chicago Teachers Union, Local No. 1 v. Board of Education of Chicago*, 2012 IL 112566, ¶ 24, 963 N.E.2d 918). The fact the legislature included language contemplating averaging salaries in other sections of the Pension Code while omitting such language from section 3-111(a) is indicative the legislature intended a different result. See 40 ILCS 5/12-134 (West 2020) (formerly Ill. Rev. Stat. 1987, ch. 108 1/2, ¶ 12-134); 40 ILCS 5/17-116 (West 2020) (formerly Ill. Rev. Stat. 1987, ch. 108 1/2, ¶ 17-116); 40 ILCS 5/18-125 (West 2020) (formerly Ill. Rev. Stat. 1987, ch. 108 1/2, ¶ 18-125); 40 ILCS 5/19-212 (West 2020) (formerly Ill. Rev. Stat. 1987, ch. 108 1/2, ¶ 19-212). Moreover, had the legislature

intended to base pension benefits on the "average actual monthly salary received by the officer," as the City suggests, it surely could have included such language within section 3-111(a) when it amended the statute. See Pub. Act 85-941, § 1 (eff. July 1, 1988) (amending 40 ILCS 5/3-111(a)). The legislature, however, did not do so.

¶ 19　　　　　Finally, we note the City's citation to *People ex rel. Campbell v. Swedeberg*, 351 Ill. App. 121, 113 N.E.2d 849 (1953), in further support of its argument. In that case, the petitioner, a disabled police sergeant, argued he was entitled to increased pension benefits based on a salary increase for sergeants, which took effect two months before he retired. *Swedeberg*, 351 Ill. App. at 123-24. The applicable statute at the time the petitioner retired provided the following, in relevant part:

> " 'Whenever any member of a regularly constituted police force in any such city, village or incorporated town, becomes physically disabled to such an extent as to necessitate the suspending of performance of his duty on such police force, or retirement from the police force, he shall be paid from the fund a pension of one half (1/2) of the salary attached to the rank he held on the police force for one year immediately prior to the time of his so suspending performance of his duty or retirement.' " *Swedeberg*, 351 Ill. App. at 123 (quoting Ill. Rev. Stat. 1951, ch. 24, ¶ 895).

On appeal, the petitioner "maintain[ed] that if he had had the rank of sergeant for one year, which [was] uncontroverted, his pension would be based on his last monthly pay check." *Swedeberg*, 351 Ill. App. at 126. Contrarily, the respondents, the Board of Trustees of the Police Pension Fund of the City of Rock Island, Illinois, argued "the plain reading of the statute lead[ ]

only to the conclusion that the legislative intention was that the petitioner should receive one-half his salary for one year prior to his retirement, and that the word 'rank' should be construed to mean rank or ranks." *Swedeberg*, 351 Ill. App. at 126. Ultimately, the Second District agreed with the respondents and found, "If the recipient should receive an increase in rank or a pay increase a short time before he is pensioned, less than a year, it seems to us that the legislative intent is that before he should receive an increased pension, he should have at least partly earned it." *Swedeberg*, 351 Ill. App. at 126-27.

¶ 20        Here, like the court in *Swedeberg*, we find the term "rank" may be properly read as including the plural within the language of section 3-111(a). See 5 ILCS 70/1.03 (West 2020) ("Words importing the singular number may extend and be applied to several persons or things ***."). Thus, in the event of a rank change, the statute would permit an officer's pension to be based on one-half the salary attached to the combined rank he or she held for one year prior to retirement. See 40 ILCS 5/3-111(a) (West 2020). However, simply averaging LaCost's "actual monthly salary," as the City urges us to do here, would not account for any longevity adjustment until March 2020. See 40 ILCS 5/3-125.1 (West 2020) (" 'Salary' means the annual salary, including longevity, attached to the police officer's rank, as established by the municipality's appropriation ordinance ***."). Section 1 of the Statute on Statutes (5 ILCS 70/1 (West 2020)) states, "In the construction of statutes, this Act shall be observed, unless such construction would be inconsistent with the manifest intent of the General Assembly or repugnant to the context of the statute." As we see it, the legislative intent is plain. The most sensible and proper construction to be given to section 3-111(a) would be to account for the salary attached to the ranks of deputy chief and sergeant—which LaCost held for approximately 3 and 9 months, respectively, prior to his last day—as well as LaCost's 24 years of service. See *Hicks v. City of*

*Des Plaines Police Pension Board*, 2013 IL App (1st) 122053-U, ¶¶ 7, 17 (finding the pension board did not err when it calculated the petitioner's pension benefits based on his rank of sergeant as set forth in the compensation schedule adopted by the city and the petitioner's longevity, even though the petitioner was receiving a higher salary). In our opinion, there is nothing inequitable arising from such construction because it would permit LaCost to be credited for his longevity and his three months of service at the higher rank of deputy chief, despite his demotion. We also find nothing within the plain language of the statute to indicate a context hostile to this construction of "rank" or anything indicating such construction is inconsistent with legislative intent. See 5 ILCS 70/1 (West 2020); see also *Kloeppel*, 2021 IL App (4th) 210091, ¶ 15 (noting the best evidence of legislative intent is the plain language the legislature chose to use). It follows, therefore, that the Board incorrectly granted LaCost pension benefits based entirely upon the salary attached to his former rank of deputy chief. Accordingly, we reverse the circuit court's judgment, vacate the Board's decision and order, and remand the cause for further proceedings consistent with this order. See *Masterton*, 2022 IL App (1st) 220307, ¶ 45.

¶ 21                                  III. CONCLUSION

¶ 22        For the reasons set forth above, we reverse the judgment of the circuit court, vacate the Board's decision and order, and remand the cause for further proceedings consistent with this opinion.

¶ 23        Circuit court judgment reversed, Board decision vacated, cause remanded.

*City of East Peoria v. Board of Trustees of the Police Pension Fund of East Peoria*,
**2023 IL App (4th) 220816**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Tazewell County, No. 20-MR-232; the Hon. Paul E. Bauer, Judge, presiding. |
| **Attorneys for Appellant:** | Robert B. McCoy, of Miller, Hall & Triggs, LLC, of Peoria, for appellant. |
| **Attorneys for Appellee:** | Richard Reimer and Vincent C. Mancini, of Reimer Dobrovolny & Labardi PC, of Hinsdale, for appellees Board of Trustees of the Police Pension Fund of the City of East Peoria and William McWhirter.<br><br>Jennifer Bonesteel, of Stephen P. Kelly, Attorney at Law, LLC, of Peoria, for other appellee. |