2026 IL App (1st) 242339

No. 1-24-2339

Opinion filed May 20, 2026

Third Division

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| ADMINISTRATIVE DISTRICT COUNCIL 1 OF ILLINOIS OF THE INTERNATIONAL UNION OF BRICKLAYERS AND ALLIED CRAFTWORKERS, AFL-CIO, | ) ) ) ) | Appeal from the Circuit Court of Cook County. |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 20 CH 6707 |
| | ) | |
| BRICKSTER INC., and GRZEGORZ PRZADA, | ) ) | Honorable Lynn Weaver-Boyle, |
| Defendants-Appellants. | ) | Judge, presiding. |

_____

JUSTICE LAMPKIN delivered the judgment of the court, with opinion.
Justices Rochford and Reyes concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiff, Administrative District Council 1 of Illinois of the International Union of

Bricklayers and Allied Craftworkers, AFL-CIO (Union), filed a complaint against defendants,

Brickster Inc. and Grzegorz Przada, seeking recovery under section 60 of the Employee

Classification Act (Act) (820 ILCS 185/60 (West 2020)). The trial court entered a default judgment

against defendants as a sanction due to discovery violations. Thereafter, the court awarded the Union statutory damages, attorney fees, and costs.

¶ 2    On appeal, defendant Przada argues that the Union is not entitled to recover damages under section 60(a)(2) of the Act, and attorney fees and costs under section 60(a)(4) of the Act. *Id.* § 60(a)(2), (4).

¶ 3    For the reasons that follow, we dismiss this appeal as it pertains to Brickster Inc. Furthermore, we affirm in part and reverse in part the judgment of the circuit court against Przada.[1]

¶ 4                                I. BACKGROUND

¶ 5    The Union is a labor organization that represents workers in the masonry construction industry. In 2020, the Union filed suit as an "interested party" pursuant to section 60 of the Act against defendants Brickster Inc. and Przada. In response to defendants' motion to dismiss, the Union amended its complaint in 2021. In the operative complaint, the Union alleged that defendants, as contractors engaged in construction work, misclassified employees as independent contractors and thereby denied the employees overtime compensation and other rights, avoided taxes, and obtained an unfair competitive advantage over contractors that complied with the law. The Union alleged that one of the misclassified workers employed by defendants was Yoni Rubio, a bricklayer and Union member. The Union alleged that it is an "interested party" within the meaning of the Act because the Union (1) represents workers in the masonry trade, (2) has an economic interest in ensuring that masonry industry employers who unlawfully misclassified their workers did not gain a competitive advantage over law-abiding competitors, with whom the Union

---

[1]In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

has collective bargaining relationships, and (3) has an interest in the fringe benefit funds that provide retirement, healthcare, and other benefits to Union members and Union-represented employees, and the misclassification of workers interferes with the ability of the trust funds to provide those benefits in an efficient and cost-effective way. In its claim for relief, the Union sought (1) an order requiring defendants to cease and desist from violating the Act by improperly classifying employees, (2) statutory damages to the Union equal to $500 for each violation of the Act with respect to each misclassified worker, (3) an award of reasonable attorney fees and costs, and (4) such other and further relief as the court deems just and proper.

¶ 6 In June 2021, defendants filed another motion to dismiss, challenging, *inter alia*, the Union's entitlement under section 60 of the Act to recover damages or other monetary relief from defendants. Specifically, defendants acknowledged that section 40 of the Act (*id.* § 40) provides an award to an interested party of 10% of a civil penalty imposed on an employer for each violation of the Act or any rule adopted thereunder (which civil penalty is determined by an audit by the Department of Labor). Defendants also acknowledged that section 60(a) of the Act (*id.* § 60(a)) allows an interested party to bring a private right of action in the circuit court without exhausting any other administrative remedies provided in the Act. Nevertheless, defendants contended that only a person whose rights have been violated under the Act, and not an interested party, is entitled to collect the relief available under section 60 of the Act—*i.e.*, (1) lost or denied wages, salary, employment benefits, or other compensation, plus an equal amount of liquidated damages, (2) compensatory damages and an amount up to $500 for each violation of the Act or any rule adopted thereunder, (3) appropriate legal or equitable relief in the case of unlawful retaliation, and (4) attorney fees and costs. *Id.* § 60(a)(1)-(4).

¶ 7 In October 2021, the court denied defendants' motion to dismiss, stating, *inter alia*, that the Union's entitlement to collect the relief provided in section 60 of the Act was not dispositive of the issue of whether the Union sufficiently pled a claim under the Act.

¶ 8 In December 2021, defendants filed an answer to the amended complaint. Defendants' answer did not raise any affirmative defenses.

¶ 9 In March 2022, the court granted the Union's first motion to compel discovery, ordered defendants to respond to the discovery by March 28, 2022, and assessed sanctions against defendants in the amount of the attorney fees and costs the Union incurred in bringing the motion. In July 2022, the Union moved the court to enter a default judgment against defendants as to liability based on defendants' failure to respond to the Union's written discovery. In October 2022, the Union moved the court to impose sanctions on defendants under Illinois Supreme Court Rule 219(c) (eff. July 1, 2002), including the entry of a default judgment and reimbursement of attorney fees and costs. Defendants filed a response in opposition to the Union's motions to compel and for sanctions, arguing that they had made good faith attempts to provide the Union with the information and documents it sought.

¶ 10 On March 8, 2023, the court granted the Union's motions and entered a default judgment against defendants as a sanction under Illinois Supreme Court Rule 219(c)(v) (eff. July 1, 2002) for their repeated discovery violations. The court's written ruling described in detail the events that led the court to conclude that defendants had "systematically failed and refused to comply with their discovery obligations." The court found that defendants showed a deliberate and contumacious disregard for the court's authority and their noncompliance was the product of willful misconduct. The court stated that its entry of this default judgment had the effect of a

finding that the Union is entitled to statutory damages, attorney fees, and costs under section 60 of the Act. Specifically, the court (1) enjoined defendants from further violating the Act, (2) awarded the Union statutory damages under section 60(a)(2) of the Act (820 ILCS 185/60(a)(2) (West 2020)) in an amount to be determined through a prove-up, (3) granted the Union its reasonable attorney fees and costs under section 60(a)(4) of the Act (*id.* § 60(a)(4)), (4) ordered defendants to reimburse the Union for attorney fees and costs incurred in connection with its discovery and sanctions motions, pursuant to Rule 219(c), and (5) imposed on defendants a monetary penalty under Rule 219(c), in an amount to be determined after further review. Thereafter, defendants moved the court to reconsider the default judgment against them, arguing that the court made erroneous and unsupported findings of fact. The court later denied defendants' motion to reconsider.

¶ 11    In his April 2023 deposition, Przada admitted that, as Brickster Inc.'s owner, he provided the materials, supplies, and equipment for the workers on the construction jobs; actively monitored and directed their work; scheduled their hours; and when he deemed it appropriate, provided their training.

¶ 12    In May 2023, the Union filed its petition to recover $77,043.28 in attorney fees and costs as a sanction under Rule 219(c), pursuant to the court's default judgment. However, briefing on this petition was temporarily stayed pending settlement discussions. Those settlement efforts were exhausted by late July 2023, and the court ordered defendants to respond to the fee petition by August 16, 2023. Defendants failed to do so.

¶ 13    In September 2023, the Union filed its first motion for a prove-up of damages against defendants. The Union argued, in part, that in light of Przada's deposition testimony, defendants

could not rebut the statutory presumption that their workers were employees. Through Brickster Inc.'s financial records, including tax returns, vendor reports, and bank statements, the Union identified and established that defendants had misclassified between 30 and 50 workers on construction jobs between 2018 and 2022 and had issued a minimum of 1,053 checks to workers on those jobs, each check representing a discrete violation under the Act. The Union also presented evidence and argument to support the Union's contention that it was entitled to statutory damages under section 60(a)(2) of the Act and an additional $75,502.64 in attorney fees and costs under section 60(a)(4) of the Act, separate and apart from the $77,043.28 in attorney fees sought in the Union's Rule 219(c) fee petition. While this first prove-up motion was pending, defense counsel Aaron Spivack withdrew on September 14, 2023. The court granted defendants additional time to obtain new counsel and respond to the Union's first prove-up motion, but defendants never did so.

¶ 14    In early October 2023, before the court could rule on the Union's pending first prove-up motion and Rule 219(c) fee petition, Przada filed for bankruptcy, thus triggering an automatic stay of the Union's action against him. With respect to defendant Brickster Inc., on October 16, 2023, the court granted the Union's first prove-up motion and Rule 219(c) fee petition. The court issued an amended final judgment and order against Brickster Inc. in the amount of $673,765.92. Furthermore, the court entered a finding pursuant to Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016) that there was no just reason to delay enforcement or appeal or both of this amended final judgment and order. Brickster Inc. did not file a notice of appeal by the 30-day deadline for appealing this final judgment against it.

¶ 15    In early May 2024, the bankruptcy court approved Przada's voluntary waiver of discharge, which effectively ended the automatic stay on actions against him.

¶ 16    On July 3, 2024, the Union filed in the circuit court a second prove-up motion for the damages against Przada, which motion incorporated the Union's arguments from its attached first prove-up motion. Defense counsel Spivack returned to the case on July 15, 2024, and pursuant to leave of court, filed a new appearance on Przada's behalf. The court ordered Przada to respond to the Union's Rule 219(c) fee petition and second prove-up motion by August 12, 2024. Przada neither responded to either filing by that deadline nor timely sought an extension of time to do so. On August 19, 2024, seven days after the response deadline, Spivack orally moved the court for additional time to respond. The court denied the request and set a hearing on the Union's Rule 219(c) fee petition and second prove-up motion for September 4, 2024.

¶ 17    During that hearing, Spivack argued, *inter alia*, that the Union was not entitled to recover damages, attorney fees, and costs under section 60 of the Act because, based on the language of the statute, only a person whose rights have been violated under the Act by an employer is entitled to collect that relief. The court ruled that Przada had forfeited this and all other arguments by ignoring the response deadline for and failing to timely oppose the Union's Rule 219(c) fee petition and second prove-up motion. The court granted the Union's Rule 219(c) fee petition and second prove-up motion, stating the record established that, although the court had allowed Spivack to present his comments during the hearing and make a record, Przada failed to timely file any response to the Union's petition and motion. Furthermore, Przada failed to timely request an extension of time until after the deadline for his responses had elapsed.

¶ 18    Also on September 4, 2024, the court entered its written final judgment and order against Przada. The court ruled that Przada was liable to the Union for statutory damages under section 60(a)(2) of the Act in the amount of $526,500, "representing $500.00 for each violation of the Act

between 2018 and 2022, as measured by what the Court finds from the evidence presented is the number of paychecks issued by Przada during that time to misclassified employees." Additionally, the court awarded the Union a total of $147,265.92 in attorney fees and costs under both section 60(a)(4) of the Act and Rule 219(c). Of that total amount of attorney fees and costs awarded, $77,043.28 represented the attorney fees and costs sought in the Union's Rule 219(c) fee petition.

¶ 19    On October 4, 2024, Przada filed a motion for reconsideration. In it, he, *inter alia*, acknowledged that section 60 of the Act permitted the Union, as an "interested party," to file suit in the circuit court without regard to exhaustion of any alternative administrative remedies provided in the Act. Przada argued, however, that the Union was not entitled to collect any damages or attorney fees and costs under section 60 of the Act because this relief was reserved for aggrieved workers who were directly impacted by their employers' misclassifications.

¶ 20    On October 24, 2024, the court denied Przada's motion to reconsider the final judgment against him. The court ruled that Przada had forfeited the arguments raised in his motion for reconsideration by failing to timely file any response to the Union's second prove-up motion and Rule 219(c) fee petition and then failing to timely request an extension of time to file a response.

¶ 21    Przada timely appealed, challenging the September 2024 final judgment against him and the October 2024 order denying his motion for reconsideration. Przada does not challenge the March 2023 default judgment or the amount of the attorney fees award.

¶ 22                                    II. ANALYSIS

¶ 23    Before addressing the merits of this appeal, we address our jurisdiction over this appeal as it pertains to defendant Brickster Inc.

¶ 24    Attorney Spivack listed both defendants Brickster Inc. and Przada as appellants on the notice of appeal Spivack filed in this matter in November 2024. When attorneys Spivack and James Noonan filed appellants' brief, the caption indicates that both Brickster Inc. and Przada are appellants, and the signature page of the brief shows that Noonan signed it on behalf of "Appellants" (plural), but the text of the brief refers only to Przada as the appellant. When the Union filed its appellee brief, it stated that this court has no jurisdiction over Brickster Inc.'s appeal because Brickster Inc. did not timely appeal the final judgment against it. The Union also noted that the text of appellants' brief refers to Przada as the only appellant. In the reply brief, Spivack and Noonan have changed the caption to indicate that only Przada is the appellant. Also, the text of the brief and signature page refer to a singular "Appellant." Spivack and Noonan make no further mention of Brickster Inc., do not move to dismiss Brickster Inc. from this appeal, and do not indicate that they represent Brickster Inc.

¶ 25    Based on the record, we conclude that we do not have jurisdiction to hear this appeal as it pertains to Brickster Inc. because it did not timely appeal the final judgment rendered against it in October 2023. See Ill. S. Ct. R. 304(a) (eff. Mar. 8, 2016); R. 303(a)(1) (eff. July 1, 2017). Consequently, we dismiss this appeal as it pertains to Brickster Inc. for lack of jurisdiction.

¶ 26    Turning to the merits of this appeal, Przada argues that the trial court's award to the Union of statutory damages under section 60(a)(2) of the Act and attorney fees and costs under section 60(a)(4) of the Act should be reversed because those subsections do not allow an interested party like the Union to collect that relief. Instead, according to Przada, the plain language of the statute provides that only "[a] person whose rights have been violated under this Act by an employer or

entity is entitled to collect" the statutory damages, attorney fees, and costs available under section 60 of the Act. 820 ILCS 185/60(a) (West 2020).

¶ 27    The Union first responds that Przada has forfeited review of this argument because—although he raised it in his motion to dismiss the complaint, which the trial court denied—he failed to plead the Union's lack of standing[2] as an affirmative defense in his answer, failed to raise this argument in his April 2023 motion asking the trial court to reconsider its March 2023 default judgment, and failed to timely raise this argument as part of any filed response to the Union's first and second motions for a prove-up of damages, attorney fees, and costs under section 60 of the Act.

¶ 28    Generally, arguments not raised before the circuit court are forfeited and cannot be raised for the first time on appeal. *Village of Roselle v. Commonwealth Edison Co.*, 368 Ill. App. 3d 1097, 1109 (2006). According to the record, Przada did raise this argument about the Union's entitlement to collect monetary relief under section 60 of the Act in his June 2021 motion to dismiss. Specifically, Przada asserted, *inter alia*, that only a person whose rights have been violated under the Act, and not an interested party, is entitled to collect the monetary relief available under section 60 of the Act. Furthermore, Przada raised this argument again in his October 2024 motion asking the trial court to reconsider its final judgment and order against him. Thus, Przada's argument on appeal was argued to and considered by the trial court. See *Mabry v. Boler*, 2012 IL App (1st) 111464, ¶ 15. The issue is not forfeited.

---

[2]Although both parties use the term "standing" in their arguments on appeal, the standing doctrine, which assures that issues are presented to a court only by parties who have a sufficient stake in the outcome of the controversy (see *State ex rel. Leibowitz v. Family Vision Care, LLC*, 2020 IL 124754, ¶ 26), is not at issue here because Przada does not challenge the Union's right as an interested party to bring an action under section 60 of the Act. Consequently, we do not address the issue of standing.

¶ 29    Next, the Union responds that, based on the language of the Act and principles of statutory construction, it is an interested party with the right to recover statutory damages under section 60(a)(2) of the Act and attorney fees and costs under section 60(a)(4) of the Act.

¶ 30    The answer to this dispute depends on whether the provision in section 60 of the Act concerning who is entitled to collect relief under section 60 is ambiguous. There is no published decision on point. The principles guiding our analysis are well established. "The fundamental rule of statutory interpretation is to ascertain and give effect to the legislature's intent, and the best indicator of that intent is the statutory language, given its plain and ordinary meaning." *Dew-Becker v. Wu*, 2020 IL 124472, ¶ 12. "When the statutory language is clear and unambiguous, it is given effect as written without resort to other aids of statutory interpretation." *Id.* Furthermore,

> "[a] court must view the statute as a whole, construing words and phrases in light of other relevant statutory provisions and not in isolation. [Citation.] Each word, clause, and sentence of a statute must be given a reasonable meaning, if possible, and should not be rendered superfluous. [Citation.] Where a term has a settled legal meaning, this court will normally infer that the legislature intended to incorporate that settled meaning. [Citation.] The court may consider the reason for the law, the problems sought to be remedied, the purposes to be achieved, and the consequences of construing the statute one way or another. [Citation.] Also, a court presumes that the General Assembly, in its enactment of legislation, did not intend absurdity, inconvenience, or injustice." *People v. Perez*, 2014 IL 115927, ¶ 9.

¶ 31    We afford the statutory language the fullest, rather than narrowest, possible meaning to which it is susceptible. *Lake County Board of Review v. Property Tax Appeal Board*, 119 Ill. 2d

419, 423 (1988). When the language can be interpreted in more than one equally reasonable way, it is ambiguous. *Board of Education of Springfield School District No. 186 v. Attorney General*, 2017 IL 120343, ¶ 25. "When we encounter ambiguity in a statute considered as a whole, we turn to tools of interpretation to help us determine the meaning of a statute." *State ex rel. Raoul v. Elite Staffing, Inc.*, 2024 IL 128763, ¶ 33. These tools include the statute's legislative history and debates. *Krohe v. City of Bloomington*, 204 Ill. 2d 392, 398 (2003). The standard of review for questions of statutory interpretation is *de novo*. *Feltmeier v. Feltmeier*, 207 Ill. 2d 263, 267 (2003).

¶ 32    The purpose of the Act is "to address the practice of misclassifying employees as independent contractors." 820 ILCS 185/3 (West 2020).[3] In its regulations implementing the Act, the Department of Labor (Department) states:

> "(a) The Act addresses the practice in the construction industry of some contractors misclassifying individuals as independent contractors in order to avoid payroll taxes, unemployment insurance contributions, workers' compensation premiums and minimum wage and overtime payments. This practice of misclassification puts contractors that comply with tax and employment laws at a competitive disadvantage." 56 Ill. Adm. Code 240.100(a), added at 32 Ill. Reg. 13,504 (eff. July 31, 2008).

"[A]n individual performing services for a contractor [who engages in construction] is deemed to be an employee of the employer except as provided in" section 10(b) and (c) of the Act. 820 ILCS 185/10(a) (West 2020). An employer's failure to properly classify an individual as an employee in

---

[3]In February 2025, House Bill 2794 was sponsored in the House chamber of the Illinois 104th General Assembly to amend various sections of the Act, including section 60. See 104th Ill. Gen. Assem., House Bill 2794, 2025 Sess. We note the existence of this proposed legislation and that it does not further our analysis. See *Bruesewitz v. Wyeth LLC*, 562 U.S. 223, 242 (2011) ("Post-enactment legislative history (a contradiction in terms) is not a legitimate tool of statutory interpretation.").

conformity with section 10 of the Act constitutes a violation of the Act. *Id.* § 20. An employer also violates this Act by retaliating "through discharge or in any other manner against any person for exercising any rights granted under this Act." *Id.* § 55(a).

¶ 33 "Any interested party may file a complaint with the Department against an entity or employer covered under this Act if there is a reasonable belief that the entity or employer is in violation of this Act." *Id.* § 25(a). The Act defines an "interested party" as "a person with an interest in compliance with this Act." *Id.* § 5. The Act, however, does not define the term "person."

¶ 34 The Department has the power to conduct investigations in connection with the administration and enforcement of the Act. *Id.* § 25(a). When the Department believes there has been a violation of the Act, the Department may, *inter alia*, "collect the amount of any wages, salary, employment benefits, or other compensation denied or lost to the individual, and *** assess any civil penalty allowed by this Act." *Id.* § 25(b)(iii), (iv). If, upon investigation, the Department finds cause to believe that an employer or entity has misclassified an employee as an independent contractor or retaliated against any person for exercising any rights granted under the Act, then the matter is referred to an administrative law judge (ALJ) to schedule a formal hearing to adjudicate violations of the Act. *Id.* § 25(c).

¶ 35 The Department's implementing regulations provide, in part:

"(a) An [ALJ], as part of any final decision finding that a violation has occurred, may:

(1) order the contractor to eliminate the unlawful practice;

(2) issue a cease and desist order;

(3) assess civil penalties as set forth in Section 40 of the Act;

(4) collect the amount of any wages, salary, employment benefits or compensation denied or lost to the individual;

(5) place the contractor on the debarment list ***; and/or

(6) take any other reasonable action to eliminate the unlawful practice and/or remedy the effect of the violation.

(b) If an ALJ finds that an employee has been misclassified under the Act, the misclassified employee is entitled to all rights and benefits to which an employee is otherwise entitled under other applicable State laws by virtue of being an employee, including but not limited to all lost wages resulting from not being paid the minimum wage or overtime. *** In addition, an ALJ can order a contractor to reimburse the person for improper deductions, such as lost unemployment or workers' compensation benefits resulting from being misclassified, or order the contractor to make contributions on the employee's behalf." 56 Ill. Adm. Code 240.510(a), (b) (2014).

¶ 36    Section 40 of the Act, titled "Penalties," provides:

"(a) An employer or entity that violates any of the provisions of this Act or any rule adopted under this Act shall be subject to a civil penalty not to exceed $1,000 for each violation found in the first audit by the Department. Following a first audit, an employer or entity shall be subject to a civil penalty not to exceed $2,000 for each repeat violation found by the Department within a 5 year period. For purposes of this Section, each violation of this Act for each person and for each day the violation continues shall constitute a separate and distinct violation. In determining the amount of a penalty, the [Department]

Director shall consider the appropriateness of the penalty to the employer or entity charged, upon the determination of the gravity of the violations.

(b) *The amount of the penalty*, when finally determined, *may be recovered in any administrative proceeding or a civil action filed in any circuit court by* the Director of Labor, or *a person aggrieved by a violation of this Act* or any rule adopted under this Act.

(1) The Department shall distribute to all affected employees 10% of the civil penalty recovered as a result of any administrative proceeding or civil action brought by the Department. The remaining 90% of the amount recovered shall be submitted to the Director of Labor.

(2) *In any civil action brought by an interested party pursuant to this Section, the circuit court shall award the interested party 10% of the amount recovered. In such case, the remaining amount recovered shall be submitted to the Director of Labor*." (Emphases added.) 820 ILCS 185/40(a), (b) (West 2020).

The Act does not define the phrase "a person aggrieved by a violation of this Act."

¶ 37   Section 50 of the Act, titled "Employee Classification Fund," provides that "[a]ll moneys received by the Department as fees and civil penalties under this Act shall be deposited into the Employee Classification Fund and shall be used *** by the Department for administration, investigation, and other expenses incurred in carrying out its powers and duties under this Act." *Id.* § 50.

¶ 38   Section 60 of the Act, titled "Private right of action," states:

"(a) *An interested party or person aggrieved by a violation of this Act* or any rule adopted under this Act by an employer or entity *may file suit in circuit court*, in the county

where the alleged offense occurred or where any person who is party to the action resides, without regard to exhaustion of any alternative administrative remedies provided in this Act. Actions may be brought by one or more persons for and on behalf of themselves and other persons similarly situated. *A person whose rights have been violated under this Act by an employer or entity is entitled to collect*:

> (1) the amount of any wages, salary, employment benefits, or other compensation denied or lost to the person by reason of the violation, plus an equal amount in liquidated damages;

> (2) compensatory damages *and an amount up to $500 for each violation of this Act* or any rule adopted under this Act;

> (3) in the case of unlawful retaliation, all legal or equitable relief as may be appropriate; *and*

> (4) *attorney's fees and costs*.

> (b) *The right of an interested party or aggrieved person to bring an action under this Section* terminates upon the passing of 3 years from the final date of performing services to the employer or entity. This limitations period is tolled if an employer or entity has deterred a person's exercise of rights under this Act." (Emphases added.) *Id.* § 60.

¶ 39    As stated above, the parties do not dispute that the Union satisfies the Act's definition of an interested party, *i.e.*, a person with an interest in compliance with the Act. We also agree that the Union is an interested party. As alleged in the operative complaint, the Union has both economic and representative interests in ensuring compliance with the Act. Specifically, the Union has an interest in ensuring that bricklayer members and non-members alike are properly classified

on jobs. Law-abiding employers who employ Union-represented employees pay into the fringe benefit trust funds that provide the health insurance and retirement benefits to Union members and other employees represented by the Union. The Union, therefore, has an interest in ensuring that these law-abiding employers are not undercut in the marketplace by law-breaking, bad faith actors who cheat their employees out of the right to overtime pay, unemployment compensation, workers compensation benefits, and other rights and cheat the state out of taxes and other payments.

¶ 40     Although the Act does not define the term "person," an unambiguous term is given its plain and ordinary meaning when no definition is provided. See *Kagan v. Waldheim Cemetery Co.*, 2016 IL App (1st) 131274, ¶ 68. In determining the plain, ordinary, and popularly understood meaning of a statutory term, it is entirely appropriate to look to the dictionary for a definition of the term. *People v. McChriston*, 2014 IL 115310, ¶ 15. A dictionary definition of "person" includes a "human individual," and "one (as a human being, a partnership, or a corporation) that is recognized by law as the subject of rights and duties." Merriam-Webster's Collegiate Dictionary 867 (10th ed. 1993).

¶ 41     Furthermore, "[i]f the term used in the statute has a settled legal meaning, the court will normally infer that the legislature intended to incorporate the established meaning." *Kagan*, 2016 IL App (1st) 131274, ¶ 69. Black's Law Dictionary defines a "person," in pertinent part, as "1. A human being. 2. An entity (such as a corporation) that is recognized by law as having the rights and duties of a human being." Black's Law Dictionary 1162 (7th ed. 1999); see 5 ILCS 70/1.05 (West 2024) (the Statute on Statutes states that " '[p]erson' or 'persons' as well as all words referring to or importing persons, may extend and be applied to bodies politic and corporate as well as individuals"). Moreover, the Department's regulations implementing the Act state that

" '[p]erson' means any individual, partnership, corporation, LLC, association, governmental subdivision, or public or private organization of any character." 56 Ill. Adm. Code 240.110 (2014). The Union, as an entity that is recognized by law as having rights and duties, is considered a "person" as that word is used in the Act's definition of an interested party.

¶ 42    The first sentence of section 60(a) of the Act broadly provides that either an "interested party" or "person aggrieved by a violation of this Act or any rule adopted under this Act by an employer or entity" may file suit in the circuit court. 820 ILCS 185/60(a) (West 2020). The Act does not contain its own definition of what it means to be "aggrieved" by a violation of the Act, so we consider whether the term has any settled legal meaning.

¶ 43    In *Rosenbach v. Six Flags Entertainment Corp.*, 2019 IL 123186, the court considered section 20 of the Biometric Information Privacy Act (Privacy Act) (740 ILCS 14/20 (West 2016)), which provided a private right of action to "[a]ny person aggrieved by a violation" of Privacy Act's restrictions on the use of biometric identifiers and information, such as fingerprints or retina scans. See *Rosenbach*, 2019 IL 123186, ¶¶ 19-21. Because Privacy Act did not define "aggrieved," the court considered the term's "popularly understood" and "settled legal" meaning. *Id.* ¶ 29. The court noted its century old definition of "aggrieved" as " 'having a substantial grievance; a denial of some personal or property right.' " *Id.* ¶ 30 (quoting *Glos v. People*, 259 Ill. 332, 340 (1913)). The court added that " '[a] person is prejudiced or aggrieved, in the legal sense, when a legal right is invaded by the act complained of *or* his pecuniary interest is directly affected by the decree or judgment.' (Emphasis added.)" *Id.* (quoting *Glos*, 259 Ill. at 340). The court stated that this understanding of the term "aggrieved" "has been repeated frequently by Illinois courts and was embedded in our jurisprudence when the [Privacy Act] was adopted." *Id.* ¶ 31. Consequently, the

court "presume[d] that the legislature was aware of that precedent and acted accordingly." *Id.* The court also noted that the foregoing understanding of the term was consistent with standard definitions of "aggrieved" found in dictionaries. *Id.* ¶ 32 (citing Merriam-Webster's Collegiate Dictionary 25 (11th ed. 2006), and Black's Law Dictionary 77 (9th ed. 2009), which defined "aggrieved," respectively, as "suffering from an infringement or denial of legal rights," and "having legal rights that are adversely affected"). We use this settled legal meaning of "aggrieved" in our analysis of the Act.

¶ 44    In contrast to section 60(a)'s first sentence's provision that two types of parties—*i.e.*, interested parties and aggrieved persons—may file suit in the circuit court, the third sentence of section 60(a) limits the entitlement to collect the relief listed therein only to "[a] person whose rights have been violated under this Act by an employer or entity." 820 ILCS 185/60(a) (West 2020). This limitation is the settled legal meaning in Illinois of an aggrieved person. Accordingly, we conclude that the Union is not entitled to collect the relief available under section 60(a) of the Act. The legislature could have easily added the term "interested party" to the third sentence of section 60(a) and thereby included an entity like the Union in this provision specifying who is entitled to collect the relief provided in section 60(a), but the legislature did not do so. This limitation is not susceptible to more than one equally reasonable interpretation and, thus, is not ambiguous. Either an employer's failure to properly classify an individual as an employee or an employer's retaliation against any person for exercising any rights granted under the Act constitutes a violation of the Act. Here, the Union has not alleged in the operative complaint that Przada violated any rights granted to the Union under the Act.

¶ 45    This limitation of section 60(a)'s remedies to aggrieved persons is supported by the separate provisions in section 40 of the relief available to aggrieved persons and interested parties. Specifically, section 40(b) states that, in any administrative proceeding or civil action filed in the circuit court by the Director of Labor or an aggrieved person, they may recover the civil penalty imposed on an employer or entity that violates the Act. *Id.* § 40(b). Specifically, in any administrative proceeding or civil action brought by the Department, the Department will distribute to all affected employees, *i.e.*, aggrieved persons, 10% of the civil penalty recovered. *Id.* § 40(b)(1). But in any civil action brought by an interested party pursuant to section 40, the court may award the interested party 10% of the amount recovered. *Id.* § 40(b)(2). There is no provision in section 40 for an aggrieved party to recover a portion of the civil penalty when an interested party brings a civil action; instead, the aggrieved party in such a situation is entitled to the relief available under section 60(a), which includes an amount (similar to the civil penalty) of up to $500 for each violation of the Act. *Id.* § 60(a)(2).

¶ 46    On appeal, the Union contends that it is entitled to collect relief under section 60(a) because it is both an "interested party" and a "person whose rights have been violated" by the unlawful misclassification scheme. The Union argues that those rights include the right to prevent employers who seek to engage in unlawful misclassification from engaging in that practice to the detriment of the Union itself, its members, the legitimate contractors for whom those members work, and the fringe benefit trust funds that provide Union members and their families with medical coverage, pensions, annuities, and other benefits. The Union asserts that it has every right to enforce the Act to promote the State's policy and ensure that contractors in the masonry industry comply with the Act so that its members, its signatory employers who abide by the law, and its fringe benefit trust

funds are not harmed by the deceptive and unlawful practices of contractors such as Przada. This argument lacks merit. Przada has not violated the Union's rights under the Act to file a complaint with the Department or file suit in the circuit court.

¶ 47    The Union also argues that section 60(a)(4) is the only provision in the Act that provides for the recovery of attorney fees and costs and denying interested parties the right to recover the fees and costs of bringing suits under the Act is contrary to the legislative intent of incentivizing "interested parties" to enforce the Act. The Union asserts that denying interested parties the right to recover under section 60(a)(2) and (4) would "render the private right of action afforded under section 60 altogether illusory" and neuter it "of any practical meaning or effect." According to the Union, barring interested parties from recovering under section 60 would eliminate any incentive an interested party has to further the State's policy by bringing claims against unscrupulous contractors and would leave enforcement of the Act almost entirely to the Department, which lacks the resources to enforce the Act fully and effectively. The Union adds that labor unions have a unique ability both to identify misclassification schemes through their policing and monitoring of construction jobs, and then to prosecute claims of misclassification under the Act. The Union argues that if an interested party's only means of recovery against a law-breaking contractor would be through a "bounty" suit under section 40 of the Act, then an interested party is entirely dependent upon the Department first imposing a civil penalty after an administrative investigation and adjudication.

¶ 48    In countering Przada's assertion that relief to the Union under section 60(a) would constitute an unjust enrichment, the Union explains that it has invested considerable resources in this matter since 2020 in seeking to enforce the Act against defendants, who for years had

misclassified workers as independent contractors in violation of the law and thereby withheld tens, if not hundreds, of thousands of dollars in taxes and other payments from the State of Illinois and the federal government. The Union adds that its outlays in enforcing the Act go beyond attorney fees and costs because the Union must expend resources to monitor and identify bad-actor employers like Przada. Thus, the Union concludes that awarding statutory damages, attorney fees, and costs to the Union is perfectly consistent with the legislative purpose behind the Act.

¶ 49     The legislature makes laws, and the courts interpret them. " 'Under the guise of construction, a court may not supply omissions, remedy defects, annex new provisions, substitute different provisions, add exceptions, limitations, or conditions, or otherwise change the law so as to depart from the plain meaning of language employed in the statute.' " *King v. First Capital Financial Services Corp.*, 215 Ill. 2d 1, 26 (2005) (quoting *In re Marriage of Beyer*, 324 Ill. App. 3d 305, 309-10 (2001)). A court may not " 'correct' " a perceived error or oversight by the legislature " 'by rewriting a statute in a manner inconsistent with its clear and unambiguous language.' " (Internal quotation marks omitted.) *Kloeppel v. Champaign County Board*, 2021 IL App (4th) 210091, ¶ 17 (quoting *People v. Pullen*, 192 Ill. 2d 36, 42 (2000)). Any policy arguments the Union may have should be directed to the legislature, not the courts.

¶ 50                                III. CONCLUSION

¶ 51     For the foregoing reasons, we dismiss this appeal as it pertains to Brickster Inc. for lack of jurisdiction. Furthermore, we affirm in part and reverse in part the judgment of the circuit court against Przada. Specifically, we affirm the circuit court's award to the Union of attorney fees and costs under Rule 219(c). However, we reverse the circuit court's award to the Union of statutory

damages under section 60(a)(2) of the Act and attorney fees and costs under section 60(a)(4) of the Act.

¶ 52    Appeal dismissed as to Brickster Inc.

¶ 53    Affirmed in part and reversed in part.

*Administrative District Council 1 of Illinois of the International Union of Bricklayers &*
*Allied Craftworkers v. Brickster Inc.*, 2026 IL App (1st) 242339

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 20-CH-6707; the Hon. Lynn Weaver-Boyle, Judge, presiding. |
| **Attorneys for Appellant:** | James V. Noonan, of Noonan & Lieberman, Ltd., and Aaron Spivack, both of Chicago, for appellants. |
| **Attorneys for Appellee:** | David P. Lichtman, George A. Luscombe III, and Barry M. Bennett, of Dowd, Bloch, Bennett, Cervone, Auerbach and Yokich, LLP, of Chicago, for appellee. |